[Civ. No. 2066. Second Appellate District.—December 27, 1916.]

# W. H. CALLAHAN, Respondent, v. J. M. DANZIGER, Appellant.

ACTION FOR SERVICES PERFORMED AND MONEY EXPENDED—EXPLORATION OF PROSPECTIVE OIL TERRITORY—PARTNERSHIP RELATION OF DEFENDANTS—SUPPORT OF FINDING.—In an action against several individual defendants for services performed and money expended in exploring prospective oil territory, a finding that the relation of general partners existed between the defendants is sufficiently established by letters which passed between them indicating that each was to furnish an equal amount of capital.

ID.—ACTION AGAINST SEVERAL DEFENDANTS—TRIAL AGAINST SERVED DEFENDANTS—RIGHT OF PLAINTIFF.—Where an action is against two or more defendants jointly or severally liable, the plaintiff may proceed against such of the defendants as have been served in the same manner as if they were the only defendants.

ID.—EVIDENCE—IMPEACHMENT OF WITNESS—EXCEPTION TO RULE.—A party calling a witness is not precluded from proving the truth of any particular fact by any other competent evidence in direct contradiction to what such witness may have testified; and this not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Geo. E. Whitaker, for Appellant.

E. F. Brittan, and Rowen Irwin, for Respondent.

JAMES, J.—Plaintiff, the respondent here, sued appellant Danziger, E. A. Wiltsee, J. M. Kent, and the Lost Hills Syndicate, the latter being alleged to be, upon the information and belief of the plaintiff, a corporation. The suit was to recover $1,170.73 for services performed and money paid out on account of the defendants. Service was made upon this appellant and Kent, who answered in the case, and upon trial being had before a jury a verdict was rendered in favor of the

plaintiff for the amount prayed for, upon which verdict judgment was thereafter entered. This appeal is taken by Danziger from the judgment and from an order denying his motion for a new trial.

It is urged, under the contention principally argued on behalf of the appellant, that the evidence was insufficient to support the judgment. A recovery was had under the claim that the individual defendants were copartners. The business in which it appears they were engaged was that of exploring prospective oil territory. The plaintiff did not show that the Lost Hills Syndicate was a corporation, but the evidence offered went principally in the direction of establishing a copartnership existing between Kent, Danziger, and Wiltsee. Defendants Kent and Danziger, being the only two who appeared at the trial, were not very specific in defining the relations existing between the three, which fact may be accounted for by the loose method of doing business which was followed in the handling of their enterprise. At the outset it may be said that, in our opinion, the facts and circumstances shown in evidence were amply sufficient to authorize a conclusion to be drawn that the relation of general partners did exist between Kent, Wiltsee, and Danziger. Plaintiff testified that Wiltsee, Danziger, and Kent composed the Lost Hills Syndicate; that he, the plaintiff, went into the Lost Hills for the persons named in October, 1910; that he was to receive $5 a day and board as superintendent for all their work in that locality; that he continued in that employment until December 18, 1911, at which time he was informed by Kent that Danziger would be no longer responsible for any debts of the concern, and that Kent was going to cease activities also. He testified to the different amounts of money which he had paid out, which, together with balance of wages claimed to be due, made up the total sum sued for. Kent appeared to be the man most accessible to Callahan, and it was mainly through Kent that Callahan received remittances. He also received remittances through Wiltsee, and in some of the letters written by Wiltsee along in the year 1911, when money appeared to be short, Wiltsee assured Callahan that he would be personally responsible for the reimbursement and payment of the plaintiff. Callahan also testified that just after he started work in 1910 Danziger was on the ground, and that he (Callahan) told Danziger that it was a little tedious working there,

as many of the men carried guns, to which Danziger replied: "Go right on, Mr. Callahan, pay no attention; I am behind you." One letter only was received by Callahan from Danziger and that was in November, 1911, when Callahan testified he wrote to Danziger regarding the action of some strangers who were cutting timber on the ground, and Danziger replied to him, giving advice about the matter. Danziger, in his testimony claimed that this was a matter of friendly advice only, and that he was not writing to Callahan as a person interested otherwise. It appeared without dispute that at various times during the year 1911 drilling rigs were furnished for use on the property in charge of Callahan, and that Danziger paid for several or all of these. About the middle of the year 1911 Danziger wrote to Kent that he would not pay any more money, saying: "I thought I made it clear to you the last time I talked to you that I was not going to put up any more money on this account. I talked with Wiltsee some time ago, and he said he would take care of all matters from then on, and I will give up my interest there before I will put up another cent, so you will have to look to Wiltsee, who gives you your orders for the salary and other bills due. I regret very much taking this position, but I am away ahead of Wiltsee in putting up money, and I would put up more if I was in a financial position to do so, but I am not, so that ends the matter." Kent, when called on behalf of the plaintiff, in the course of his testimony said that shortly after he received this letter from Danziger he informed Callahan of Danziger's declaration that he would not be responsible for any more bills. Callahan testified that the conversation to which Kent referred occurred in December, and that he immediately thereafter quit the employ of the concern and made an attachment to secure his debt. Appellant did testify that his arrangement was that he was to furnish money for rigs, indicating that that was to be the extent of his liability; but taking the history of all of the transactions as illustrated by the testimony and letters, it seems a logical inference that the individual defendants were operating under a plan of copartnership. In the letter of Danziger to which we have last referred he said that he was then ahead of Wiltsee in putting up money, indicating that each man was to furnish an equal amount of capital. We are not here permitted to sit as a trial court and judge of the weight of the testimony, and cannot concern ourselves be-

yond determining that there was some evidence to sustain the verdict and judgment. It is argued on behalf of the appellant that Callahan could not enforce a claim against Danziger after the date in July, 1911, when Danziger wrote to Kent that he had put up more money than Wiltsee, and would not longer be responsible for any of the debts; that as plaintiff's own witness Kent testified that he communicated this information to Callahan immediately after receiving that letter, the plaintiff is bound by the testimony, and that Callahan's statement that the conversation in which this notice was given to him occurred in December must be disregarded. This is not the true rule applicable to the matter. Section 2049 of the Code of Civil Procedure provides that a party producing a witness may contradict the witness by other evidence. In *Norwood* v. *Kenfield,* 30 Cal. 393, it is said: ''A party calling a witness is not precluded from proving the truth of any particular fact by any other competent evidence in direct contradiction to what such witness may have testified; and this not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief. This is one of the exceptions to the general rule that a party cannot impeach his own witness. (1 Greenl. Ev., sec. 443.)'' Danziger in fact did continue to participate in the adjustment of matters connected with the so-called syndicate down to the end of the year 1911, all of his actions showing a continued interest in the enterprise. All of the letters to Kent from Danziger and the actions of Danziger in any regard connected with the affairs of the syndicate, were properly admitted in evidence. Other letters written by Wiltsee or Wiltsee's agent, may not have been strictly admissible, but under the rule of the constitution we do not think that any error predicated upon the ruling of the trial court in allowing the evidence can be said to have worked a miscarriage of justice. We think, too, that it was proper for the court to allow the trial to proceed as against the two defendants. There was no claim that any service had been made upon the so-called corporation syndicate, and all of the proof tended to show that no such corporation existed; that the so-called ''syndicate'' consisted merely of Kent, Wiltsee, and Danziger, who were associated together in the way that has been described. Section 414 of the Code of Civil Procedure provides that where

an action is against two or more defendants jointly or severally liable, the plaintiff is permitted to proceed against such of the defendants as have been served in the same manner as if they were the only defendants. The instructions of the court seem to have fairly stated the law applicable to the condition of fact illustrated by the evidence. The partnership, as it must be assumed the jury found to exist, was not a mining partnership as defined by section 2511 of the Civil Code, where the members are associated together for the purpose of working a mining claim, but in its very nature was of general scope.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.