[Crim. No. 1106.   Third Appellate District.—February 13, 1930.]

THE   PEOPLE,   Respondent, v. VIRGIL   FREER, Appellant.

Blaine McGowan for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was convicted of grand theft. It is contended the evidence fails to support the judgment and that the court erred in refusing to give certain instructions to the jury.

The defendant's wife, who is named Dolores, but was called Del, was employed as an entertainer at the Frontier Cabaret in Eureka. She had apartments at the Redwood rooming-house, which she used for assignation purposes. The defendant was a taxi driver. On the night of August 22, 1929, the prosecuting witness Vikan and a companion by the name of Brough visited the Frontier Cabaret, where they met Mrs. Freer and other entertainers. The cabaret closed at 2 o'clock in the morning. The group consisting of Mrs. Freer and Vikan, Brough and two other dance girls named respectively Annabelle and Florence were driven by the defendant in his taxicab to the Splendid Cafe, where

they remained for an hour eating and drinking. The defendant was not a member of this party. The entire group then went to the Redwood rooming-house, where for two hours they occupied together the bedroom of Mrs. Freer. The evidence would warrant the jury in assuming that by prearrangement between the defendant and his wife, Vikan was lured to this room for the purpose of plying him with liquor until he became sufficiently drunk to safely rob him. Mrs. Freer knew he had a purse containing a number of greenbacks. He had exhibited it at the restaurant when he paid the bill for refreshments. She saw him slip the purse under the pillow on his bed in her room. During the two hours the revelers occupied the room at the Redwood apartments, Mrs. Freer was actively engaged in procuring and dispensing whisky to them. Three times she left the room and returned each time with a bottle of liquor which she obtained from her husband, who was conveniently stationed with his taxicab in front of the Redwood rooming-house. The last bottle of whisky was voluntarily contributed by Mrs. Freer without charge. Regarding the presence of the defendant at the rooming-house, Florence Pedro, one of the occupants of the room, testified: "Q. Each time Del had to leave the room and go somewhere and get the liquor and return? A. Yes, but she didn't go so very far. Q. How long was she gone? A. Well, she just stepped out and (just) had time to come right back in. Q. Did she have it in the hall? A. Well, she had a taxicab there (it was) supposed to be her husband; he was waiting there. Q. You didn't see him, did you? A. Saw him once, yes . . . When he come up with the first bottle, he was standing out in the hall. . . ."

In a statement which was made by the defendant after his arrest he admitted having furnished the liquor and that he twice left the Redwood rooming-house, where he was stationed that night, to obtain liquor at the request of his wife. He said: "Q. You did make two trips *from* the Redwood rooms that night? A. Yes. . . . Q. And you returned each time with a pint of whisky? A. Yes. . . . Q. What time was it that you arrived there the second trip? A. Four-fifteen. . . . Q. When you came back you were inside the building? A. Yes, sir. . . . I went as far as the end of the hall . . . upstairs." Florence Pedro also corroborates the evidence of his presence at the door of his wife's room about

4 o'clock, which was shortly before the time of the theft. She said she saw him in the hallway at the door. "Q. It was when that she (Dolores Freer) took the purse . . . ? A. Close to four o'clock in the morning."

It is the theory of the prosecution that the purse of Vikan containing four hundred dollars in greenbacks was stolen by Mrs. Freer from under the pillow and delivered to the defendant in the hallway immediately afterward. At the time the purse was taken the entire group were in the room. Vikan sat on the edge of his bed beside Annabelle Sonneland. Florence Pedro sat on the adjoining bed. Mrs. Freer stood near the head of Vikan's bed serving whisky. Suddenly she put the bottle down and reaching under the pillow, she withdrew the purse and hurried out of the room into the hallway. Both Vikan and Florence Pedro saw her take the purse. The latter immediately arose and called to Annabelle that Dolores had stolen the purse, and directed her to follow the thief and assist in recovering the purse. Within a brief period of time, during which Florence Pedro was engaged in putting on a wrapper and slippers, she rushed in pursuit of Mrs. Freer into the hallway, where she found her alone. The defendant was not in sight. Seizing Dolores, Florence Pedro accused her of stealing the purse and demanded that she give it up. Whereupon Mrs. Freer slumped down upon the floor, pretending that she had been hurt and said: "Oh, my husband hit me across the head and took it away from me." A quarrel ensued. Considerable commotion followed. Mrs. Freer was immediately searched by the girls, but neither the purse nor the money was found. The foregoing accusation against the defendant by his wife was hearsay evidence, but it was adduced without objection. Moreover, on cross-examination of Florence Pedro by counsel for the defendant the following controversy occurred: "Q. Oh, you asked her where the purse was? A. Yes. Q. And she said, 'I haven't it'? A. No. She said, 'my husband hit me over the head and took it.'" This statement of Mrs. Freer's was also corroborated by another witness.

After quarreling for some time among themselves about the disappearance of the purse, the police office was called about 5:25 o'clock in the morning and the theft was then reported. The officers immediately hastened to the Redwood

rooming-house and interviewed the members of the party. They then took the group to police headquarters, where a more particular examination was conducted. They then returned to the Redwood apartments once more and after a careful search Officer Rutledge discovered the empty purse under the slop-hopper in the hallway where Mrs. Freer stood when she charged her husband with striking her and taking the purse. The officers then went to the home of the defendant, where they arrived at 6:35 o'clock in the morning. He was found in bed, but was immediately placed under arrest. He subsequently made the statement heretofore quoted.

We are satisfied the evidence is sufficient to support the judgment of conviction. It is true that the testimony indicates that the defendant was either a principal in the commission of the crime according to the definition of that term which is found in section 31 of the Penal Code on the theory that he aided and abetted in its commission, or that Dolores Freer was an accomplice of the defendant and therefore under the provisions of section 1111 of the Penal Code he could not be convicted upon her charge of his guilt alone "unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." It is insisted that the evidence merely shows the defendant had the opportunity to steal the money, but that it utterly fails to prove that he actually did so. His wife, however, charged him directly with taking the purse. To be sure this charge was adduced by means of hearsay evidence. But it was introduced in the record without objection and was reiterated on cross-examination by the defendant's own counsel. Hearsay evidence which is adduced without objection is proper to be considered in support of a verdict of conviction. It will be observed that section 1111 of the Penal Code requires the testimony of an accomplice to be corroborated by facts or circumstances which *tend* only to connect the defendant with the commission of the offense. The record contains ample evidence which tends to so connect him. He took the entire party in his taxicab from the cabaret to the restaurant. He knew his wife's occupation and must have been acquainted with her reputation. He did not take the group from the restaurant to the Redwood rooming-house. He knew they were there, however, for his machine was parked out in front while his

wife was plying the victim with liquor so as to get him in a suitable condition to safely rob him. The defendant supplied the liquor by means of which the job was accomplished. He delivered the last bottle to his wife in the hallway at about 4 o'clock, which is the exact time when Florence Pedro says the theft occurred. He was therefore present at the very time and place to have received the purse which his wife charged him with taking. He then disappeared from the scene of the theft and returned there no more. Evidently he knew there would be no further demand for liquor. Mrs. Freer was immediately seized after she stole the purse and was searched. She had neither the purse nor the money. The money was never recovered. It seems to have disappeared with the defendant. Soon afterward the empty purse was found under the slop-hopper where it was evidently hastily thrown or hidden.

The defendant admitted he was in the hallway to which his wife fled with the purse at 4:15 o'clock that morning. These facts certainly tend to connect the defendant with the commission of the crime and corroborate his wife's charge that he struck her and took the purse away. At least it is reasonable to infer from these circumstances that the defendant was in the hallway when his wife came from her room and either forcibly took the purse from her or received it when she voluntarily gave it to him and that he hastily extracted the greenbacks, threw the purse under the slop-hopper and fled. The slight delay which followed Mrs. Freer's flight from the bedroom before she was overtaken in the hallway and the commotion which followed may reasonably account for the failure to hear the defendant as he went down the stairway or to hear him start his machine and drive away from the rooming-house.

The defendant contends that his statement which was offered in evidence by the prosecution furnishes a complete alibi and binds the state by his assertion that he was in bed at 4:30 o'clock the morning of the theft, which precludes the possibility of his guilt. The prosecution, however, is not bound by a self-serving declaration of an accused person which may be included in his statement merely because it is offered in evidence by the state. The jury had the exclusive right to pass upon the weight of the evidence and in doing so it was privileged to reject the entire statement

or any part thereof which it believed to be false. Any other rule would render such statements valueless to the prosecution for it is a recognized tendency on the part of one who is accused of a crime to strenuously profess his innocence. ■ Section 2049 of the Code of Civil Procedure authorizes the party who produces a witness to "contradict him by other evidence" or show that "at other times (he made) statements inconsistent with his present testimony." (*Callahan* v. *Danziger*, 32 Cal. App. 405, 408 [163 Pac. 65]; Jones on Evidence, 3d ed., 1349, sec. 857.)
■ Moreover, the statement fails to furnish evidence of an alibi. The defense assumes that immediately after Dolores Freer was seized in the hallway and accused of the theft, the police department was called; that since this call did not actually occur until 5:25 o'clock in the morning and that the defendant was in bed at 4:30 o'clock, it therefore furnishes a complete alibi. While there may be some evidence to support this theory, the testimony of Florence Pedro which is quoted above, is that the purse was taken "close to four o'clock in the morning." The defendant admitted he was in the hallway at the Redwood apartments at 4:15 o'clock. This would connect him closely enough with the theft of the purse at about 4 o'clock and still give him ample time to drive his taxicab from the Redwood rooming-house and get in bed about 4:30 o'clock. An alibi was therefore not satisfactorily established. It is unquestionably true that the police department was not called until 5:25 o'clock. This was a little over an hour after the theft occurred. It does not seem unreasonable to believe that the members of this group of revelers laboring under the influence of three pints of whisky, or more, may have consumed the intervening hour and a quarter quarreling and wrangling over the loss of the purse. Under such circumstances as this case presents, too accurate calculation of time may not be insisted upon in order to create an alibi upon which to discharge an accused who is surrounded with so many incriminating circumstances. It was the province of the jury to determine whether an alibi had been successfully established.
■ The defendant complains of the court's refusal to give to the jury an instruction which was offered to the effect that mere proof that the defendant had the opportunity to commit the crime with which he was charged, was insufficient to warrant a conviction, but that the prosecution

must prove beyond a reasonable doubt that the defendant actually did commit the crime. In view of other instructions which were given to the jury, the refusal to give this instruction was not error. The jury was instructed respecting the nature of the crime with which the defendant was charged in the precise language of the information. They were then repeatedly told that "The defendant's guilt must be established beyond a reasonable doubt." Furthermore, the jury was instructed that "You are here for the purpose of trying the issues of fact that are presented by the allegations of the information filed in this court," and " . . . If you entertain . . . a reasonable doubt . . . that the defendant committed *the offense charged in the information*, it is your duty to return a verdict of not guilty." Finally, the jury was instructed that the prosecution must prove to a moral certainty and beyond a reasonable doubt every essential element and circumstance necessary to establish the defendant's guilt of the crime with which he was charged, or he was entitled to an acquittal. In view of these instructions it seems unreasonable to assume that the verdict could have been based upon evidence that the defendant merely had the opportunity to commit the offense with which he was charged rather than proof that he actually did commit the crime of grand theft.

The defendant also charges the court with error in refusing to give to the jury an instruction to the effect that the defendant could not be convicted of grand theft upon mere evidence of the unlawful possession or sale of illicit liquor, and that such evidence did not even tend to prove the crime with which he was charged. This may have been a proper instruction in view of the prominence which was given to the subject of intoxicating liquor in the present case. However, we do not think it was error to refuse this charge, since the jury was so specifically instructed with respect to the necessity of proving each of the essential elements of the particular offense with which the defendant was charged.

We are of the opinion that the jury was fully and fairly instructed upon the law of the case and that there was no miscarriage of justice.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.