[Crim. No. 4284.   Second Dist., Div. One.   Mar. 10, 1949.]

THE PEOPLE, Respondent, v. JOHNNY B. INES, Appellant.

Max Solomon for Appellant.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged with a violation of subdivision 2 of section 337a of the Penal Code, which denounces as a crime, among other things, the keeping or occupancy for any period of time whatsoever, of any room, tenement, etc., with books, papers or other devices or paraphernalia for the purposes of recording or registering bets or wagers upon the result of any horse race. When the case was called for trial a jury was waived, and by stipulation the cause was submitted to the trial judge upon the transcript of the testimony adduced at the preliminary examination and the exhibits introduced thereat, coupled with the right of either the People or the defendant to offer such further testimony as they might desire. Defendant was adjudged guilty. From the judgment pronounced against him and from the order denying his motion for a new trial, defendant prosecutes this appeal.

The factual background which gave rise to this prosecution as reflected by the record may be thus epitomized:

At about 2 o'clock on the afternoon of May 4, 1948, Officers Melby and Canfield, of the Los Angeles Police Department, entered a café located at 113 East First Street in the city of Los Angeles. The café is approximately 60 feet in length, the

front portion of which is occupied by a beer and wine concession which is operated by one DeVera. A telephone is located behind the counter of the café, approximately 10 or 12 feet from the concession owned by DeVera, and which telephone admittedly belonged to him. Upon entering the café, Officer Melby walked to the extreme rear portion of the building, through swinging doors into the kitchen where he encountered the defendant writing on several pieces of paper. When the officer reached a point within about 2 feet of the defendant, the latter said, "Oh!" took the pencil with which he was writing, and put it in his pocket. The officer testified that the papers upon which the defendant was writing were what is commonly known as betting markers, which the officer recovered, and they were introduced into evidence. After searching the premises in the vicinity where the defendant was standing, the officer took him to the front portion of the building where he searched him, but the search revealed nothing. This witness testified he did not see the defendant make any telephone calls nor did he hear him say anything, nor did he observe anyone making a wager with the defendant. The witness testified that he observed the defendant writing upon the aforesaid papers for approximately a minute.

When Officer Canfield was called as a witness it was stipulated that he was qualified as an expert on bookmaking and the paraphernalia used in connection therewith; that he was present at the time of the arrest of the defendant. This officer testified that he searched the premises and found papers similar to the ones that had been recovered from the defendant and that under the small scale which was near the DeVera concession he found a betting marker. He also identified several slips of paper upon which there was no writing and testified that they were recovered from the back of the bar at which DeVera was seated. He also testified that he found three scratch sheets underneath the pads in the booths of the café, but that he did not see the defendant handle any of them.

Officer Canfield further testified that after he found the foregoing paraphernalia, the telephone, which was behind the counter of the café, rang on several occasions; that he answered it; that a voice asked for "Johnny," that he said, "Yes" and that the voice said, "This doesn't sound like Johnny," and then said, "This is Greco, two to win on Gold Ball in the sixth at Bay Meadows." That shortly thereafter the telephone rang again and a voice asked for "Johnny" and then said, "This is Dison, four to win on Fuego," and hung up. Again the

telephone rang and again a voice asked for "Johnny" and said, "This is Eddie. Two to win on Kohu in the eighth."

The witness testified he then asked defendant how long he had been making book at this particular place, to which he replied, "I am not a bookmaker. I just hand around here because I know a lot of people. I didn't have anything to do with those pieces of paper."

It was then stipulated by counsel for the defendant and the district attorney that the officer would testify that People's Exhibits "A" and "B" were betting markers, that they contained the names of horses running on race tracks throughout the United States on the day in question; that the officer made a comparison of all of People's Exhibit "A" and a portion of People's Exhibit "B" and found them to be the names of horses, and that they corresponded to the names of horses contained on the scratch sheet, People's Exhibit "C." It was further stipulated that the names of the horses listed on the scratch sheet were horses running or purportedly running on the day in question on tracks throughout the United States. The witness further testified that on one of the occasions when the telephone rang a voice inquired for "DeVera" but did not make a wager.

The defendant did not take the witness stand to testify in his own behalf nor did he present any evidence.

■ As the sole ground for a reversal, appellant earnestly asserts that the evidence is insufficient to establish his guilt. He makes no claim that the corpus delicti of the crime was not established, but contends that the evidence fails to prove beyond a reasonable doubt his participation in the same. The question presented is therefore, whether the evidence revealed sufficient facts to warrant the inference of guilt or whether it may be said that upon no hypothesis whatever is there substantial evidence to support the conclusion reached by the trial judge that appellant was occupying the premises in question and was possessed of the necessary equipment used for recording bets, which constitutes the offense with which he was charged.

In *People* v. *Roseberry,* 23 Cal.App.2d 13, 14 [71 P.2d 944], the word "occupy" is defined as follows: ". . . To take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in" (citing Webster's New Intl. Dict., 1921).

In the instant case there is no dispute as to appellant's presence in the room, nor is there any denial of the testimony

that he was in possession of and writing upon the betting markers when the arresting officers entered the premises. Added to this is the testimony concerning the telephone calls (as to the admissibility of which we shall later refer), wherein the voices of the persons calling asked for "Johnny," which is appellant's name, and after receiving assurance they were talking with "Johnny" placed their bets. We are persuaded that from the foregoing the inference could be fairly drawn by the trial judge that appellant conducted himself or did business in a manner prohibited by the Penal Code. ▮ The purpose for which the place was being used or occupied by an accused need not be established by direct evidence, but may be gathered from all the surrounding circumstances shown by the evidence (*People* v. *Newland,* 15 Cal.2d 678, 683 [104 P.2d 788] ; *People* v. *Barnhart,* 66 Cal.App.2d 714, 721 [153 P.2d 214]). It is not necessary to prove that the primary purpose of maintaining the place was to register bets (*People* v. *Smith,* 35 Cal.App.2d 73, 76 [94 P.2d 633]), nor is it incumbent upon the prosecution to establish that appellant was the owner, lessee or an employee upon the premises (*People* v. *Steinfeld,* 38 Cal.App.2d 280, 282 [101 P.2d 89] ; *People* v. *Partee,* 70 Cal.App.2d 736, 739 [161 P.2d 586]).

Appellant's reliance upon the cases of *People* v. *Rabalete,* 28 Cal.App.2d 480 [82 P.2d 707], and *People* v. *Fisk,* 32 Cal. App.2d 26 [89 P.2d 142], can afford him no comfort because the factual situations therein present are at once distinguishable from the facts shown in the case at bar. In the cited cases the question involved was the sufficiency of the evidence to connect the particular appellant with the paraphernalia or occupancy of, rather than mere presence in, the places in question, while in the instant case the evidence heretofore narrated is ample. ▮ In the cause now engaging our attention, the evidence presented by the prosecution was without contradiction. Appellant did not take the witness stand to deny the testimony of the police officers, nor did he offer any defense whatsoever, either to the charge of occupancy of the place or as to his possession of and writing upon the aforesaid betting markers, all of which tended to show a causal connection between him and the betting paraphernalia commonly used for recording and registering bets on horse races. Such failure by him to explain or deny under oath the evidence woven about him was itself a potent fact for consideration by the trial judge and affords additional support for the judg-

ment (*People* v. *Brown,* 71 Cal.App.2d 166, 168 [162 P.2d 300] ; *People* v. *Reifenstuhl,* 37 Cal.App.2d 402, 404 [99 P.2d 564] ; *People* v. *McCabe,* 60 Cal.App.2d 492, 498 [141 P.2d 54] ; Const., art. I, § 13).

We come now to a consideration of appellant's claim that the court erred in receiving into evidence conversations on the telephone between one of the arresting officers and those who called the place in question with reference to placing bets. Appellant concedes that the court may properly receive evidence of such conversations, not for the purpose of establishing the truth of what was said over the telephone, but for the limited purpose of establishing that the room or place in question was being occupied for placing bets on horse races (*People* v. *Kelley,* 22 Cal.2d 169 [137 P.2d 1] ; *People* v. *Radley,* 68 Cal.App.2d 607, 609 [157 P.2d 426]), but he earnestly asserts that such conversations may not be relied upon to connect him with the crime.

It is true that evidence of the telephone calls was hearsay except for the limited purpose above set forth and had proper objection been made thereto it would have been inadmissible except for the foregoing limited purpose. However, in the case at bar no objection whatsoever was made at the time the now challenged evidence was proffered. Hearsay evidence which is adduced without objection may properly be considered in support of a judgment of conviction (*People* v. *Freer,* 104 Cal.App. 39, 43 [285 P. 386] ; *People* v. *Magusin,* 120 Cal.App. 115, 117 [7 P.2d 764] ; *People* v. *Guiterez,* 126 Cal.App. 526, 529 [14 P.2d 838]). The record showing that this testimony was given without any objection being made on behalf of appellant, the challenge to its admissibility, as now presented, is without merit.

The judgment and order from which this appeal was taken are and each is affirmed.

Doran, Acting P. J., concurred.