[Civ. No. 23065. Second Dist., Div. Two. Nov. 24, 1958.]

FARMERS AND MERCHANTS BANK OF LONG BEACH (a Corporation), Respondent, v. E. A. KIRK et al., Defendants; CONN PULOS, Appellant.

Theo. G. Krumm for Appellant.

C. Z. Walker, Jr., for Respondent.

HERNDON, J.—The sole question presented by this appeal is the sufficiency of the evidence to support the trial court's finding that defendant and appellant, Conn Pulos, was a partner in the firm described as Amboy-Cal Gypsum Company, a copartnership.

Plaintiff recovered a deficiency judgment against appellant and others in the sum of $3,805.84 after repossession and sale of certain tractor equipment which originally had been sold under a conditional sales contract. The trial court found that Albert A. Robbins, Harry Wind and appellant Pulos were partners, doing business under the name of Amboy-Cal Gypsum Company, a copartnership (hereinafter referred to as "the Company"). Neither the liability of the Company nor the amount of the judgment is questioned. Appellant alone appeals, denying only the sufficiency of the evidence to establish his membership as a partner in the firm.

It appears that Robbins was the prime mover in promoting the business of the Company in the mining, processing and selling of agricultural gypsum and soil minerals. Appellant testified that he was the owner of certain gypsum properties; that he had offered to sell gypsum to Robbins and his associates on a royalty basis; that he had furnished gasoline and other supplies for the mining operations of the Company and that for a short period of time he had acted as general manager at a salary of $250 per month. Appellant denied that he became a partner, testifying that in furnishing mer-

chandise to the Company he became its creditor. He admitted that he might have signed documents for the Company but had no recollection as to the nature of any such document. He testified that in signing any documents for the Company he had acted only in his capacity as manager.

Defendant Wind testified in substance that at one time the Company had prospects of obtaining a certain "million dollar order"; that it was planned to incorporate the business when this order materialized, and that Wind, Pulos and Robbins were each to receive a one-third interest in the corporation which presumably would exploit the mineral deposits on appellant's properties.

Respondent introduced into evidence a two-page typewritten document on the letterhead of the Company referred to as plaintiff's "Exhibit No. 4." This document purports to constitute a "Franchise Agreement" between the Company and one Determan, who signed as "Franchise Owner," and one Collins who signed as "Franchisee." Appellant, Robbins and Wind each signed "For the Company" as indicated by the quoted designation appearing below their respective signatures. This item of evidence possesses significance not only by reason of the manner in which it was signed, but also by reason of the nature of its subject matter. The indicated purpose of the instrument was to define the respective territories in which named individuals were granted exclusive franchises to sell and distribute the products of the company. It prescribed prices and conditions of sale and provided that the franchises thereby granted should endure for a term of 20 years. It seems most reasonable that a grant of such character and importance would be executed not by an employee but by the owners of the business, that is to say, by the partners. Admittedly, Robbins and Wind signed as partners and, as we have seen, appellant affixed his signature with theirs in a manner and over a designation clearly suggesting that he signed in the same capacity as they.

Appellant, when questioned on cross-examination with reference to his signature on plaintiff's Exhibit No. 4, admitted the apparent genuineness of his signature, but disclaimed any recollection of signing the document. A rebuttal witness called by respondent testified that he was in the courtroom when plaintiff's Exhibit No. 4 was introduced into evidence, and that he overheard Wind then say to appellant: ". . . , My God, they have that 30-year contract," and that appellant replied: "I told you we should never have signed that."

■ The question whether a partnership existed "was primarily a question for the trial court to determine from the facts and the inferences to be drawn therefrom." (*Spier* v. *Lang,* 4 Cal.2d 711, 716 [53 P.2d 138]; *Kersch* v. *Taber,* 67 Cal.App.2d 499, 504 [154 P.2d 934].) ■ And where there is no writing evidencing the agreement, the existence of a partnership may be evidenced by the conduct of the parties. (*Wine Packing Corp. of Cal.* v. *Voss,* 37 Cal.App.2d 528, 530 [100 P.2d 325]; *Niroad* v. *Farnell,* 11 Cal.App. 767, 769 [106 P. 252]; *cf. Lyon* v. *MacQuarrie,* 46 Cal.App.2d 119, 124 [115 P.2d 594].)

■ We are satisfied that the recited evidence, viewed in conformity with familiar rules (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]), with the inferences legitimately to be drawn therefrom, adequately supports the challenged finding. (*Primm* v. *Primm,* 46 Cal.2d 690, 693-694 [299 P.2d 231].) Appellant's own testimony concerning his relationship with Robbins and Wind was rather indefinite, unclear and unconvincing. The circumstances of his furnishing supplies to the Company, his acting as general manager, his dealings with reference to his gypsum properties and his signing of the franchise agreement afford an adequate basis for the inferences which were drawn by the trier of the facts. (*Callahan* v. *Danziger,* 32 Cal.App. 405, 407 [163 P. 65]; *Wine Packing Corp. of Cal.* v. *Voss, supra,* 37 Cal.App.2d 528, 530-532; *cf. Singleton* v. *Fuller,* 118 Cal.App.2d 733, 741 [259 P.2d 687].)

The attempted appeal from the order denying appellant's motion for a new trial is dismissed and the judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.