[Civ. No. 24333. Second Dist., Div. Three. Aug. 29, 1960.]

CALADA MATERIALS COMPANY (a Corporation), Respondent, v. M. H. COLLINS et al., Defendants; R. W. WALKER, Appellant.

Philip E. Poppler and John R. Brunner for Appellant.

Doyle & Johnson, Preston W. Johnson and Henry F. Walker for Respondent.

VALLÉE, J.—Appeal by defendant R. W. Walker from an adverse judgment in an action for the value of oil well drilling materials alleged to have been sold by plaintiff to defendants M. H. Collins and R. W. Walker.

The complaint is in three counts: one in *indebitatus assumpsit* on account of oil well drilling materials furnished by plaintiff to defendants at their special instance and request; one for

the reasonable value of the materials; and one on an account stated. Each count alleged the amount to be $11,133.99. The judgment was against defendants M. H. Collins and R. W. Walker individually and doing business as a partnership under the name Collins and Walker for the amount alleged as owing with interest. Walker, referred to as defendant, appealed. Collins did not.

Plaintiff delivered mud and mud materials in connection with the drilling of two oil wells, Higdon No. 3 and C & W No. 1. Defendant concedes he is liable for an unpaid balance of $5,338.21 plus interest for materials furnished by plaintiff for Higdon No. 3. He denies he is responsible for any part of $5,795.28 for materials furnished by plaintiff for C & W No. 1.

The court found that at all times mentioned in the complaint defendants Collins and Walker were doing business as a partnership under the firm name of Collins and Walker. Defendant contends the finding is unsupported by the evidence as to "the project to drill the second well"—C & W No. 1. He says the record cannot support a finding on any theory that he be held liable to plaintiff for the material furnished in the drilling of C & W No. 1.

The two wells were drilled by the same contractor. Work on Higdon No. 3 was completed in October 1955. The rig was immediately "skidded" about 450 feet and C & W No. 1 was drilled. Collins and Walker testified the relationship between them was the same as to both wells. Plaintiff furnished the materials for both wells. Walker signed the contract with the drilling contractor with respect to C & W No. 1. This contract named Collins and Walker as "Operator" and provided that mud and mud materials would be furnished at the expense of "Operator." On one occasion Walker, speaking of the lease on which C & W No. 1 was drilled, said "he was a partner with Collins and backing him and anything Collins did he was with him as long as it was all right with Mr. Collins." When Walker signed the drilling contract for C & W No. 1 he was asked, "You are partners in the deal, aren't you?" Walker replied, "Yes." During the drilling of C & W No. 1 there were signs on the rig and on trailers around the site reading, "Collins-Walker, C & W No. 1." On several occasions Collins introduced Walker as his partner with respect to C & W No. 1. Walker told plaintiff's manager that he and Collins were partners in C & W No. 1 and that plaintiff would get part of the money, if not all of it, in a few days and that Collins would pay him. The parties were talking about past bills for Higdon No. 3 and about future money for C & W

No. 1. Walker said "he would see that the back bills were paid and that C & W No. 1 would be taken care of. Q. Did he [Walker] say as to whether or not he was a partner with Collins in C & W No. 1? A. Yes. . . . Yes, he did, because I asked him, as I stated a few minutes ago, I asked him who and where and how the money was coming from, and I meant the C & W No. 1, for any future deliveries because I would not deliver any more materials to the well. That is when he told me that, and I asked him who was involved in the well because I understood that they were selling percentages in the well to raise money. So, I wanted to find out exactly who was involved in it and to what extent, and he told me that he was in partners with Mr. Collins in C & W No. 1." Plaintiff handled the account under the name "Collins and Walker."

██ A partnership need not be evidenced by a writing. It may be oral. (*Brown* v. *Fairbanks,* 121 Cal.App.2d 432, 439 [263 P.2d 355].) ██ And where there is no writing evidencing the agreement, the existence of a partnership may be evidenced by the conduct of the parties. (*Farmers & Merchants Bank* v. *Kirk,* 165 Cal.App.2d 470, 473 [332 P.2d 131].) Corporations Code, section 15016, in part reads:

"When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made."

██ Whether the acts and conduct of Walker were sufficient to lead plaintiff to believe he was a copartner and assumed responsibility as such was a question of fact for the trial court to determine from the evidence and the inferences to be drawn therefrom. (*Crabbe* v. *Mires,* 112 Cal.App.2d 456, 459 [246 P.2d 991].) ██ We are satisfied the recited evidence and the inferences to be drawn therefrom adequately support the challenged finding. (*Farmers & Merchants Bank* v. *Kirk,* 165 Cal.App.2d 470 [332 P.2d 131]; *Wurm* v. *Metz,* 162 Cal.App.2d 262 [327 P.2d 969].)

■ Defendant asserts the court erred in rulings on the admissibility of evidence. His brief is devoid of a single reference to a ruling of the court in this respect, and it is devoid of a single reference to the reporter's transcript. We repeat what we have said many times: we do not search the record to find error. Under this heading counsel indulges in a two-page discourse on the liberalization of the rules of evidence. His discourse may be of interest to some, but it has no place at bar.

Finally, defendant asserts one partner cannot be held to account for debts of the partnership in an action in which all the partners are not joined. He says the record shows that in addition to Collins and defendant, there were some 60 partners who participated in the venture to drill C & W No. 1. This is a misleading statement. ■ Defendant relies on articles of limited partnership which were not executed until long after plaintiff had furnished the materials for the well. This document names Collins as general partner and numerous others, not including defendant, as limited partners. Section 15526 of the Corporations Code (Uniform Limited Partnership Act) expressly provides:

''A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership.''

The ''some 60'' limited partners were not proper parties to the action.

Defendant has appealed from the nonappealable order denying a new trial. This appeal will be dismissed.

Judgment affirmed. Appeal from order dismissed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 26, 1960.