HERNDON, J.
 

 Defendants Corkery and Pond appeal from plaintiff’s judgment of $5,700 rendered after a nonjury trial in an action brought to recover a commission allegedly due to respondent from appellants as a result of a real estate transaction.
 

 Respondent is a licensed real estate broker. In the latter part of May 1959, he entered into negotiations with appellant Pond relating to the sale of a subdivision in Riverside County, the title to which stood in the name of appellant Corkery, who, as the evidence hereinafter recited will show, was engaged in a joint venture with Pond in the ownership and management of said land. Respondent and Pond viewed the property and Pond submitted to him a description and map which indicated that it contained 375 one-acre estates. Respondent, working with another broker, obtained buyers who indicated their willingness to pay the purchase price which had been set by Pond.
 

 On June 5, 1959, respondent and Pond, with the assistance
 
 *656
 
 of an escrow officer, drew up escrow instructions for the sale of the property. The instructions stated that the property was comprised of at least 375 acres and that $50,000 of the total purchase price of $225,000 would be paid in cash through escrow, the balance of $175,000 to be evidenced by a note and secured by a deed of trust. An instruction was included directing that a commission of $11,250 be paid to respondent out of the purchase money.
 

 On Saturday, June 6, 1959, respondent and his wife, who was a notary public, met with appellants. It was then orally agreed that respondent would take part of his broker’s commission in land or trust deeds. A memorandum was prepared and signed by respondent and appellant Corkery in which it was agreed that the 5 per cent commission to be paid respondent would be paid $2,500 in cash and the balance of $8,750 “ in land or property” in Lancaster. Appellant Pond signed as a “Witness.” Respondent asked whether the memorandum should be placed in escrow. Appellants said that they preferred that it should not be because it might hold up the closing of the escrow. It was agreed that unless land satisfactory to respondent was designated before the close of escrow, respondent was to receive his commission as provided in the instructions. The escrow instructions were then examined and executed by appellant Corkery as the ‘ ‘ Seller. ’ ’ They were later submitted to the escrow officer. The memorandum was not included.
 

 On June 9, 1959, respondent learned that the property did not conform to the description which he had received from Pond. It appeared to him from the title reports that odd pieces had been sold out of the total, that a 40-foot strip along the front had been sold for a new highway, and that there were other variances. Respondent reported these discrepancies to a representative of the buyers and thereafter informed Pond that the buyers refused to proceed because of the discrepancies. Pond then told him to “make the best deal you can.” That evening Pond flew to Hawaii. The next day, June 10, respondent advised Pond by telephone that the only way the deal could be closed would be to reduce the selling price by $6,000. Pond verbally authorized him to assign $6,000 of his commission as a credit to the buyers on behalf of the seller. Respondent thereupon executed and placed in escrow an authorization that the buyers be credited with this amount out of his commission, indicating therein: “This amount is advanced by the undersigned on behalf of the seller. ...”
 

 
 *657
 
 The escrow closed on June 11, 1959. Respondent received $5,250 cash. The buyers were credited with $6,000. A check for the balance of the down payment was made payable to appellant Corkery and was accepted by Pond’s wife on behalf of the sellers. In the latter part of June, Pond returned from Hawaii. Very shortly thereafter, he and respondent discussed the matter while on a trip to Antelope Valley to look at some land. On July 1, 1959, appellant Pond sent a letter to respondent in which he recognized the $6,000 obligation and indicated his intention to allow respondent to select a piece of land belonging to him worth $8,250 for a payment of $2,250. Thereafter they failed to agree on any land to be transferred to respondent and no payment of any kind was made.
 

 The court found that appellants were joint adventurers in various real estate transactions, including the sale of the real property here involved, and that they acted in concert, one with the other, as principals in the sale of the land; that respondent was employed as a broker by Pond on behalf of himself and appellant Corkery; that the escrow instructions and the memorandum were executed by Corkery acting on behalf of herself and Pond; that the instructions provided for payment of $11,250 commission to respondent, said commission being 5 per cent of the purchase price; that the parties neither intended nor desired that the memorandum agreement be deposited into escrow as a modification of the escrow instructions ; that Pond 1 ‘ verbally instructed and authorized plaintiff to modify the instructions by reducing the purchase price in the amount of $6,000, arid further, authorized plaintiff, pursuant to said modification, to advance $6,000 for and on behalf of defendants . . . out of . . . [his] commission”; that respondent complied; that Pond, with knowledge that respondent had complied, ratified and approved in writing respondent’s actions; and that at no time did the parties reach agreement as to any property to be conveyed to respondent in lieu of the money due for his earned commission.
 

 The conclusions were: that the agreement expressed in the escrow instructions to pay $11,250 commission to respondent was not modified except to the extent required by the $6,000 reduction in the selling price of the property which operated to reduce respondent’s commission to $10,950; that Pond’s ratification of his oral authorization to respondent also bound appellant Corkery; that the so-called agreement of June 6, 1959, was expressly dependent for its legal effect upon the possibility of a future agreement which was never áecom
 
 *658
 
 plished; that respondent had been paid $5,250 and that a balance of $5,700 was due, owing and unpaid to him. Judgment was for that amount.
 

 The first contention of appellants is that the court erred in denying their motion for a mistrial. The record reflects that during the presentation of plaintiff’s case, the court had a conference with counsel and thereafter talked to appellant Pond alone and then to respondent and his wife alone in an attempt to effect a settlement. The record further reflects that the court’s discussions with the parties were had with the full knowledge, acquiescence and approval of counsel and without the slightest suggestion of any objection.
 

 In the course of the argument on the motion, the following statements were made by the court and by appellants ’ counsel: 1 ‘ The Court : Do you contend that any discussions that were had by the court with the attorneys and with the respective parties to this action was done against the will of yourself, Mr. Lavine, or against the will of your client? Mr. Lavine: Well, it was not done against my will, your Honor. I am always in favor of a settlement. ... In answer to your Honor's question directly, I will state it was not against my wishes. I favor discussions for settlement and it was not against my wishes....”
 

 In denying the motion, the court stated: “Well, if the court agreed with your client and felt it was not in a position to give him a fair trial, I would suggest this at the very outset and not wait for a motion to be made. But since the court feels that it can act with complete objectivity, that it can appraise the facts dispassionately, that it can apply the law as it is presented to it by counsel, and such law as its own independent research and knowledge places in the possession of the court and will place into the possession of the court at the conclusion of this case, and since the court feels that the interest of justice would not be served by granting the motion, the motion will be denied. . . . And also because the court feels that it is capable of retaining an open mind and complete objectivity and will be swayed and persuaded only by the burden of the evidence that appears in the courtroom and within the confines of the record made out by the parties to this litigation. All these reasons, each of them and all of them collectively. . . . Let it [the record] also show this was done with the full acquiescence of counsel and only in response to an inquiry by the court whether, in the opinion of counsel, some constructive purpose might be served, and that in addi
 
 *659
 
 tion thereto, counsel, the court spoke to Mr. Pond in the presence of his own counsel.”
 

 Appellants assert that the court’s attempt to effect a settlement was coercive, indicated that he had prejudged the case, and amounted to the taking of evidence outside the courtroom. They further assert, without any citation of the record and apparently in an attempt to show prejudice, that the court conducted some of the examination of the witnesses, suggested questions to plaintiff’s counsel, and prepared the findings in the case.
 

 As to the contention that the court’s actions were coercive and indicated that he had prejudged the case, it is elementary that misconduct of the court must appear in the record before it can be reviewed on appeal. Where the objection relates to matters occurring in chambers or to anything not appearing in the transcript, the alleged facts must be placed in the record. (See
 
 Gantner
 
 v.
 
 Gantner,
 
 39 Cal.2d 272, 277-278 [246 P.2d 923];
 
 McVey
 
 v.
 
 McVey,
 
 132 Cal.App.2d 120, 123 [281 P.2d 898].) We have thoroughly reviewed the record and find absolutely no evidence of coercion, bias, or prejudgment on the part of the court. On the contrary, we note that he exercised a high degree of courtesy and patience and at all times appeared to maintain an open and unprejudiced attitude.
 

 However, interviewing litigants separately in chambers, even with the consent of counsel, in an effort to settle the case during the trial, is ill-advised for in the event settlement is not effected and the trial is resumed, the losing party may understandably feel that something was said during such interviews that influenced the judge’s decision but which, had he or his attorney been present, could have been successfully answered or explained.
 

 Appellants contend that certain findings are not supported by the evidence. The first questioned finding is that appellants were joint adventurers.
 

 In stating the facts in accordance with the familiar rule of appellate review, we have accepted all testimony and inferences favorable to respondent wherever the evidence presented a substantial conflict. We are satisfied that the recited evidence and the inferences reasonably to be drawn therefrom furnish abundant support for the challenged finding.
 
 (Calada Materials Co.
 
 v.
 
 Collins,
 
 184 Cal.App.2d 250, 253 [7 Cal.Rptr. 374].) Furthermore, Pond directly testified:
 
 “It
 
 is a joint venture, and she allows me to use money of hers, which I use,
 

 
 *660
 
 and we both participate-in the profits. You can call it, I am her nominee or you can say that she is my nominee or that she owns the property and I am her agent. ...” While the
 
 extrajudicial declarations
 
 of an agent are not admissible to prove his agency or the extent of his authority
 
 (Vind
 
 v.
 
 Asamblea Apostolica, Christo Jesus,
 
 148 Cal.App.2d 597, 604 [307 P.2d 85]), his
 
 testimony
 
 is competent to prove these facts.
 
 (El Rio Oils Ltd.
 
 v.
 
 Pacific Coast Asphalt Co.,
 
 95 Cal.App.2d 186, 193 [213 P.2d 1]; cert, denied 340 U.S. 850 [71 S.Ct. 77, 95 L.Ed. 623].)
 

 . Appellants next question the finding that the parties neither desired nor intended that the memorandum regarding the substitution of land or property for cash as a part of respondent’s commission be deposited into escrow as a modification of the .escrow instructions. They assert that it was not their intention that the memorandum modify the escrow instructions, but that it was to have the same force and effect as if placed in escrow. There was testimony by the plaintiff that it was agreed that the land or property referred to in the memorandum agreement was to be designated prior to the close of escrow, and if it was not, the escrow instructions were to prevail. On conflicting evidence, the court found in favor of respondent.
 

 The third questioned finding, namely, that the buyers ascertained that only 365 acres were included, appears to be based upon testimony of the respondent that he informed Pond that the buyers would not proceed because there were discrepancies in the description of the property. There is no claim that respondent fraudulently induced Pond to authorize the $6,000 credit to the buyers. Whether the buyers were informed of the discrepancies was not in issue. A finding outside the issues is to be disregarded as surplusage.
 
 (Morgan
 
 v.
 
 Walker,
 
 217 Cal. 607, 610-612 [20 P.2d 660].)
 

 There was evidence and a finding that Pond orally instructed respondent to advance $6,000 for and on behalf of appellants to the credit of the buyers out' of his commission, and that he complied. By assignment of the broker’s commission, it was thus possible, in effect, to reduce the price of the property without the execution of a supplemental written instruction by appellant Corlcery, in whose name title was held. The court also made a finding that Pond orally authorized respondent “to modify the escrow instructions by reducing the purchase price” and that he complied. Appellants assert this latter finding is unsupported by the evidence. Manifestly the contention is unsubstantial and without merit.
 
 *661
 
 •The latter' finding merely states in more general terms the finding that Pond orally instructed respondent to advance the money to the credit of the buyers.
 

 Appellants next, contend that since this action is based on a claim for a broker’s commission, the statute of frauds bars recovery. They argue that by the assignment of a portion of his commission, respondent “could not alter the escrow instructions nor get an additional commission as a broker for services rendered without an agreement in writing.” We fail to understand this argument.
 

 ■■ An oral agreement to pay commissions to a real estate broker is within the statute of frauds, but subsequent written ■escrow instructions recognizing the obligation make it enforceable.
 
 (Coulter
 
 v. Howard, 203 Cal. 17, 22 [262 P. 751];
 
 Devereux
 
 v.
 
 Sirkus,
 
 105 Cal.App.2d 340, 344 [233 P.2d 644];
 
 Martin
 
 v.
 
 Chernabaeff,
 
 124 Cal.App.2d 648, 650 [269 P.2d 25].)
 

 ■. Thus, there is no question but that the provision for the payment of respondent’s 5 per cent commission was enforceable and it was, in fact, carried out by the payment of $5,250 to respondent in cash and by the assignment of $6,000 to the credit of the buyers. The assignment' of the $6,000 for and on behalf of appellants pursuant to Pond’s instructions was the advancement of the money at the special instance and request of appellants and required no writing. The argument that respondent assigned the funds on his own behalf to complete the deal was not accepted by the trier of fact. Appellants also argue that they did not agree to repay respondent.
 

 A payment voluntarily made to a third person for the use and benefit of another cannot be recovered from the latter as money loaned.
 
 (Curtin
 
 v.
 
 Black Oak Dev. Co.,
 
 35 Cal.App. 1, 5 [168 P. 1157].) However, as here, where one person pays out money for the benefit of another, at' the latter’s request, a common count for money paid, laid out and expended will lie.
 
 (Kraner
 
 v.
 
 Halsey,
 
 82 Cal. 209, 210 [22 P. 1137];
 
 Jaffe
 
 v.
 
 Lilienthal,
 
 86 Cal. 91, 92 [24 P. 835];
 
 Pleasant
 
 v.
 
 Samuels,
 
 114 Cal. 34, 37-38 [45 P. 998].)
 

 ■ If we look beyond details of the transaction to its effect, as urged by appellants, it appears that even though the effect was to modify orally the terms of an. agreement required to be in writing, the doctrine of estoppel would apply in favor of respondent. As we have stated, respondent testified that .Pond agreed to send him a demand note for the $6,000. The fact that the note apparently was to be signed by Pond, while
 
 *662
 
 a circumstance to be considered in determining the intentions of the parties, does not relieve the other member of the joint venture from liability if the signer had authority to bind the other and if the note was executed with that intent and so accepted. The nature of the transaction fairly and reasonably implies the advancement of the money to accommodate the needs of the joint venture. (See
 
 Wurm
 
 v.
 
 Metz,
 
 162 Cal.App.2d 262, 269 [327 P.2d 969].)
 

 The final argument advanced on behalf of appellants is that the court erred in holding them liable on the theory of mutual agency generally applicable to partnerships and joint ventures.
 

 The rule is that each partner or joint venturer is the agent of the others in making contracts reasonably necessary to carry out the enterprise.
 
 (Engineering etc. Corp.
 
 v.
 
 Long-ridge Inv. Co.,
 
 153 Cal.App.2d 404, 411 [314 P.2d 563];
 
 Lindner
 
 v.
 
 Friednash,
 
 160 Cal.App.2d 511, 520 [325 P.2d 612].) A few cases have held that this rule is not applicable to all joint ventures. It cannot be urged here, as it was in those cases, that either appellants ’ identity or their connection with the venture was unknown to respondent. Nor can it be urged that Pond exceeded his authority in authorizing the assignment. (Cf.
 
 Hansen
 
 v.
 
 Burford,
 
 212 Cal. 100, 111 [297 P. 908];
 
 Hayward’s
 
 v.
 
 Nelson,
 
 143 Cal.App.2d 807, 814 [299 P.2d 1013].)
 

 The evidence shows that actually and ostensibly Pond had broad authority. Appellant Corkery permitted him to make all decisions and direct the details of the transactions. In contracts with third persons the law imposes liability upon one who either represents himself or consents to another representing him as a partner in an actual or apparent partnership. (Corp. Code, §15016;
 
 Dodd
 
 v.
 
 Tebbetts,
 
 198 Cal. 333, 340 [244 P. 1081];
 
 Moen
 
 v.
 
 Art’s Café,
 
 95 Cal.App.2d 577, 579 [213 P.2d 393];
 
 Singh
 
 v.
 
 Kashian,
 
 124 Cal.App.2d Supp. 879, 884 [268 P.2d 768].)
 

 The assignment of the $6,000 to the credit of the buyers at the instance and request of appellants effected the closing of the escrow. Appellants accepted the benefits of the sale and made no attempt to rescind the transaction. There was testimony that the profits were subsequently invested in another joint venture of appellants. The venture, having obtained the benefits of the transaction, appellants as members thereof cannot escape liability for the $6,000 advanced by
 
 *663
 
 respondent for and on behalf of the venture.
 
 (Grant
 
 v.
 
 Weatherholt,
 
 123 Cal.App.2d 34, 45-46 [266 P.2d 185].)
 

 The judgment is affirmed; the attempted appeal from the order denying motion for a new trial is dismissed.
 

 Fox, P. J., and Ashburn, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied September 5, 1962.