[Civ. No. 10594. First Appellate District, Division One.—November 10, 1938.]

F. STAUFFER, Respondent, v. TI HANG LUNG & Co. (a Copartnership) et al., Appellants.

Joseph C. Haughey for Appellants.

Hugh K. McKevitt for Respondent.

TUTTLE, J., *pro tem.*—Judgment for $3,000 was recovered against appellants, based upon their liability as indorsers on a promissory note, and they now appeal from such judgment.

The complaint contains the usual allegations in such actions. The answer sets up a number of defenses, all of which were found by the trial court to have been untrue. While a number of points are discussed separately by appellants, they are all tied into the question of whether or not the indorsement in the name of appellants was solely for the purpose of accommodation. The trial court found against appellants on this issue, and it is contended that such finding lacks evidentiary support in the record. Whether or not appellants were accommodation indorsers was a question of fact for the fact-finder (*Western H. Lumber Co.* v. *Superior F. Mfrs.*, 18 Cal. App. (2d) 287 [63 Pac. (2d) 828]), and if the finding attacked has substantial support in the record, our inquiry on that subject is at an end.

The following facts appear without substantial conflict: The appellant Ti Hang Lung & Co. consists of some thirty-five partners, seven of whom live in San Francisco. Their business is importing general merchandise, mainly rice. Jay Yue was at all times a member of the partnership, and up to two weeks before the execution of the note in question was the managing partner in San Francisco. The China Rice Importing Co. was organized about March, 1935, for the purpose of selling rice in packages, by Wm. M. Mogan, Jay Yue and Jay Chapman (also assistant managing partner of the partnership, since deceased). Mogan had a third interest therein, appellant partnership a third, and Jay Yue and Chapman a third. On June 18, 1935, Mogan went to the Pacific National Bank (plaintiff's assignor) and on behalf of

his corporation requested a loan of $3,000, which the bank declined to make because of the insecure financial standing of the corporation. The next day Mogan and Jay Yue went to the bank and asked if the bank would accept the note of Ti Hang Lung & Co. (appellant) and after looking over the financial statement of appellant, the bank consented to make the loan to appellant. Jay Yue executed a promissory note in appellant's name, and appellant's account was credited with the $3,000, which was the next day paid over to the corporation by a check. The day before the note matured, on September 16, 1935, Mogan and Jay Yue requested a renewal of the note, this time with the corporation as maker and the partnership as indorser, which was done. On December 16, 1935, Mogan and Jay Yue again requested a renewal of the note, and an additional $1,000, which was again executed (in the sum of $4,000) in the corporation's name with the partnership as indorser. The last note transaction took place on March 17, 1936, at which time Mogan paid $1,000 on the previous note and a renewal note was executed for $3,000, again signed by the corporation as maker with the partnership as indorser. On March 2, 1936, two weeks prior to the execution of this note, Jay Yue and another partner requested that the signature card of the partnership be changed because Jay Yue was no longer the manager—the other partner had been made manager. On April 11, 1936, the bank wrote to the partnership advising them that they were holding the note, which was the first knowledge obtained by the partnership of the existence of the note. The cancelled note dated December 16, 1935, was thereupon turned over to the partnership's attorney to ascertain the facts surrounding its execution and the renewal note.

The definition and liability of an accommodation indorser is set forth in section 3110 of the Civil Code, as follows: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

It is contended that the indorsement of appellants was made without the receipt of value therefor on their part,

and that the only construction that can reasonably be placed on the evidence is to the effect that there was no consideration whatever for said indorsement, and consequently they were accommodation indorsers. Being in the latter capacity, they argue that they are then in position to better attack the authority of their managing partner to make such indorsement in the name of the partnership, and such an attack is made.

China Rice Importing Co. will be hereafter designated as "the company". From the statement of facts given above, it appears that it was organized by Jay Yue (managing partner of appellant), Jay Chapman (also assistant managing partner of appellant) and Wm. M. Mogan, for the sole and express purpose of selling in package form the rice imported by appellants. When the company was organized, appellants, through Jay Yue, purchased one-third of its capital stock, and owned the same at all times mentioned. The business of the company was conducted from appellant's store. The other partners of appellants in San Francisco knew about these operations, and made no objection thereto. The foregoing facts are relied upon by respondent as being sufficient to support a finding to the effect that something of value was received by the partnership for the indorsement. It can reasonably be inferred, under such circumstances, that a loan of three thousand dollars to the company would inure directly to the benefit and advantage of appellants. The latter owned a very considerable proportion of the capital stock of the company. The company was engaged in selling the rice of the partnership. Anything which would contribute to the financial stability and credit of the company would directly benefit appellants. We therefore hold that there was sufficient evidence in the record from which the court could reasonably find that the partnership received something of value for its indorsement, and that it was therefore not an accommodation indorser.

While it is the rule that the power of partners to bind one another by commercial paper does not extend to indorsements or other contracts for the accommodation of a third person (20 R. C. L., p. 903), it is also well settled that promissory notes executed by a general partner in the *ordinary course of business* are binding on the other partners, even though they have had no knowledge of the execution

thereof. (*Jacobson* v. *Lamb*, 91 Cal. App. 405, 409 [267 Pac. 114] ; *Smith* v. *Mertz*, 106 Cal. App. 272, 275 [289 Pac. 209].) The basis for these decisions is subdivision (1) of section 2403 of the Civil Code, which reads as follows: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." ■ It is undisputed that Jay Yue was a general partner of appellant during all the times mentioned. The only remaining question is whether or not the evidence justifies an inference that the transaction was "in the ordinary course of business". Very pertinent to this question is the undisputed fact that the entire proceeds from the note *were immediately placed by the bank in the commercial account of the partnership*, and not that of the company. It was then withdrawn by Jay Yue, managing partner of appellant, and turned over to the company. Thus the record shows that one partner executed the note and the entire loan was placed in the partnership account. That the instrument was executed by one partner in carrying on the usual business of the partnership is a fact which, in our opinion, could be reasonably inferred and found by the trial court upon such a record, and its finding cannot be disturbed here. It is true, the evidence shows, as pointed out by appellants, that the bank knew that ultimately the loan proceeds were to go to the company, if the expressed intention of the parties was carried out. Nevertheless, the bank was under no legal duty to inquire into or consider the use to which this money would finally be applied by respondent.

It is contended that the donor of the power of attorney as manager, given to Jay Yue died prior to the execution of the note, and that this rendered such power void. Conceding that the point has merit, the evidence shows that Jay Yue was a general partner at the time he executed the note in the name of the partnership, and that such note was not executed under such power but by one partner in the name of the

126

partnership. Our opinion is predicated upon that theory; hence the existence of the power of attorney is immaterial.

We find no error in the record and accordingly the judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.