[Civ. No. 9334. Third Dist. July 21, 1958.]

HERMAN WURM, Respondent, v. LESTER METZ et al., Defendants; LEONARD GLENN BAKER et al., Appellants.

---

*Plaintiff does not question the propriety of the allowance ($250) for handling the Rothschild escrow.

Corkin & Corkin and Clewe, Blade & McDonald for Appellants.

Erling S. Norby and John T. Kenward for Respondent.

WARNE, J. pro tem.*—This is an appeal by Leonard Glenn Baker and Iva D. Baker, his wife, from a judgment against them in the amount of $12,191.15. Lester Metz and Marjorie Metz, his wife, codefendants, have not appealed.

The complaint alleged and incorporated by reference in each count, "that at all times herein mentioned the defendants were partners doing business under the firm name of Baker and Metz in the County of Yuba, State of California, and as such engaged in the business of raising, buying, producing and selling poultry." In seven counts the complaint alleges indebtedness of said defendants in certain amounts for money loaned and for goods sold and delivered by plaintiff or his assignors to the defendant, Lester Metz, for the use of said partnership and business, or for goods sold and delivered to the defendants.

*Assigned by Chairman of Judicial Council.

The answer of the defendants Metz admitted that they were doing business as Baker and Metz for the production and marketing of poultry, admitted the indebtedness alleged in counts 2 and 7, and that plaintiff loaned money to Lester Metz as alleged in count 1 and denied the alleged accounts stated; denied Lester Metz and Marjorie Metz, and Leonard Glenn Baker and Iva D. Baker were partners at any time alleged in the complaint and denied that the money loaned or the goods sold and delivered were for the use of the alleged partnership and the business. In answer the defendants Baker denied that either of the partners were doing business under the name of Baker and Metz or that they were in any way associated with Lester Metz and Marjorie Metz other than that they were the parents of said Marjorie Metz, and the owners of the real property, and improvements thereon, which was leased to the defendants Metz. The evidence shows that in January, 1952, Mr. Baker and Mr. Metz orally agreed that each would receive 50 per cent of the profits from the buying, processing and selling of poultry under the name of Baker and Metz, Mr. Baker in return for furnishing the land improvements, equipment and $4,000, represented by 5,000 chickens on hand, and Mr. Metz for his labor. They agreed that Metz was to keep books. Said agreement was never changed and was in effect when the business was terminated in 1955. From January, 1952, until the cessation of the business in February, 1955, the business operated under the firm name of Baker and Metz. A commercial bank account for the business was carried under the name of Baker and Metz. Mr. Baker at all times had authority to write checks on said account. When the agreement was originally made they agreed also that each would receive $40 a week from the account of Baker and Metz and each did so during 1952. In 1952 they agreed to increase said amount to $60 a week and from 1953 until discontinuance of the operations each received $60 from the account of Baker and Metz. Frequently, Mr. Baker went to the place of business in Hallwood. He purchased chickens in Sonoma and Petaluma for the business. He wrote checks for the purchase of poultry and occasionally for the rent due him. When the business was terminated it was indebted in the amount of $15,000 or $16,000. From 1952 through 1954 Mr. Baker and Mr. Metz each received about $8,320 or a total of over $16,000 from the account of Baker and Metz.

Pursuant to an application for a cash buyer's license to

handle poultry for the Baker and Metz Poultry Farm, a partnership consisting of ''Glenn Baker'' and Lester Metz, a cash buyer's license was granted for one year from January 29, 1952, by the Bureau of Market Enforcement, Department of Agriculture, State of California. A cash buyer's license was granted for one year from January 29, 1953, and again for one year from January 29, 1954, to the Baker and Metz Poultry Farm. These licenses all indicated that Mr. Metz and Mr. Baker were the owners of the business. The license for 1954 was posted upon the premises of the business as required by law. Mr. Baker testified that he had seen the posted license but paid no attention to it.

Defendants introduced a purported lease dated January 1, 1952, executed by the Bakers as lessors and the Metzes as lessees, whereby the Bakers leased to the Metzes for five years said real property and certain personal property consisting of equipment for the purpose of the acquisition, production and marketing of poultry by the Metzes at this location. The lessees agreed to use the name of Baker and Metz in the poultry business; to pay as rental one-half of the net profits of the business; to keep a complete set of books open to the lessors' inspection and to deliver to the lessors a semiannual financial statement beginning March 1, 1953, and make a division of profits from the business. Defendants also introduced a notice of doing business under a fictitious name and of a dissolution of partnership dated October 31, 1952, recorded November 8th and filed November 18, 1952, and an affidavit of publication of said notice filed January 7, 1953. The notice stated that the copartnership under the name of Baker and Metz, Poultry Producers, existing between Leonard Glenn Baker and Iva D. Baker and Lester Metz and Marjorie Metz was, on September 30, 1952, dissolved, said Bakers having retired from the business, and that the Metzes would continue doing business under the name of Baker and Metz for the production and marketing of poultry at the location involved.

Appellants Baker contend first that the finding that at all times mentioned in the complaint the defendants were partners doing business under the name of Baker and Metz is not supported by the evidence in this case.

In *Singleton* v. *Fuller*, 118 Cal.App.2d 733, 740-741 [259 P.2d 687], where the Supreme Court denied a hearing, that court said:

''In determining whether a relationship such as that of

partners has been created, the courts are guided not only by the spoken or written words of the contracting parties, but also by their acts. [Citation.] The fact that no complete control of any part of a partnership venture is vested in each partner does not negative the existence of a partnership since, by agreement, one partner may be given the duty of management of the enterprise or any part thereof.''

 In *San Joaquin Light & Power Corp.* v. *Costaloupes,* 96 Cal.App. 322, 334 [274 P. 84], the court said:

''. . . The courts will not countenance contrivances for giving persons the whole of the advantage of a partnership, without subjecting them to the liabilities, and an agreement which attempts to carry out a joint venture for the mutual profit of the adventurers and evade their responsibility for losses may be enforced and construed as creating a partnership.''

As indicated by the trial court in its memorandum opinion in this case, the defendants-appellants Baker appear to have been contriving to receive the benefits of a partnership without being subject to its liabilities.

 In *Asamen* v. *Thompson,* 55 Cal.App.2d 661, 668-669 [131 P.2d 841], the court stated:

''. . . A partnership once shown to exist is presumed to continue until the contrary is shown, and the burden of proof is upon him who asserts its termination.''

 There is ample evidence to support the finding that Mr. Baker was a partner in the business. Pursuant to an application for a cash buyer's license to handle poultry for the Baker and Metz Poultry Farm, a partnership consisting of Glenn Baker and Lester Metz, a cash buyer's license was granted for one year from January 29, 1952. Defendants introduced a notice of dissolution of partnership that ''the co-partnership heretofore existing under the firm name and style of BAKER & METZ, poultry producers, . . . between LEONARD GLENN BAKER and IVA D. BAKER, husband and wife, . . . and LESTER METZ and MARJORIE METZ, his wife, . . . was on the last day of September, 1952, dissolved by mutual consent of the parties thereto . . .'' However, in the application for the cash buyer's license and in the notice of dissolution defendants were claiming an existing partnership. No evidence was introduced other than the notice to show that the parties took any steps or had any intent to terminate the existing partnership by the winding up of partnership affairs. Instead, defendants introduced said lease and testified to the effect that

defendants operated the poultry business under only one agreement, made on January 1, 1952, whereby the Bakers were lessors and the Metzes were lessees. It would appear that the parties continued the business without any termination or liquidation of partnership affairs and that the partnership continued.

The fact that both Mr. Baker and Mr. Metz each received about $8,320 from 1952 through 1954 from the business which was operating at a loss shows a community of interest and participation in nonexistent profits. Baker never requested a financial statement and did not inspect the books until a week before Mr. Metz left temporarily. At that time he discovered that the business was in bad condition but a week later he received $60 from the business.

Additional evidence supporting the finding that Mr. Baker was a partner in the business is that when the business was started in January, 1952, he furnished the land, equipment and money; he had authority to write checks on the account of Baker and Metz, and wrote checks for the purchase of poultry and to himself; and he worked on the premises of the business and purchased chickens and entered into other contracts therefor. Further significant evidence is that a cash buyer's license was granted for the year 1952 through 1954 to the Baker and Metz Poultry Farm, indicating Lester Metz and Leonard Glenn Baker as the owners thereof. The license was posted on the premises of the business.

The only evidence connecting Mrs. Baker with the partnership is her ownership with her husband of the real property on which the business was located and her notice as one of the existing partners of dissolution of the partnership as of September 30, 1952. Therefore, it appears that the finding that she was a partner is not supported by the evidence.

Appellants contend next that the first four causes of action were for money loaned by plaintiff or his assignors to defendant Lester Metz individually. In connection with the first cause of action plaintiff testified that when he made the loans Lester Metz stated that the business of Baker and Metz needed capital because Mr. Baker was having difficulty in selling his property in Indiana; that it was his (plaintiff's) understanding that the firm of Baker and Metz was composed of Mr. Baker and Mr. Metz; that he loaned the money to the business for the purchase of chickens. Lester Metz testified

that several times in 1953 he borrowed money from the plaintiff and told him it was to buy and process chickens.

In connection with the second cause of action plaintiff testified that Lester Metz told him he needed funds to buy supplies for current needs because cold storage holdings had not been sold during the holiday season. He had no knowledge of the purported dissolution of the partnership of Baker and Metz.

In connection with the third cause of action Lester Metz testified that he told plaintiff's assignor that he needed the money for operational expenses in the business. Plaintiff's assignor testified that Lester Metz said he wanted to put the money into the poultry business of Baker and Metz.

In connection with the fourth cause of action plaintiff's assignor testified that he loaned the money for the use of the partnership to keep the plant going and he had no knowledge of the purported dissolution of the partnership.

The sums alleged and admitted by defendants Metz in the first and third causes of action were evidenced by notes signed by Lester Metz and in the second and fourth by checks of Baker and Metz, signed by Lester Metz, and returned by the drawee bank to plaintiff or his assignor because of insufficient funds.

In *Stauffer* v. *Ti Hang Lung & Co.*, 29 Cal.App.2d 121, 124-125 [84 P.2d 209], the court said:

". . . [P]romissory notes executed by a general partner in the *ordinary course of business* are binding on the other partners, even though they have had no knowledge of the execution thereof."

The fact that the notes were signed by Metz individually, while a circumstance to be considered in determining the intention of the parties, does not relieve the partnership of liability if such partner had authority to bind the firm and the notes were executed with such intent and were so accepted and credit extended therefor. (*First Nat. Bank of Dixon* v. *Spangler*, 49 Cal.App. 133 [192 P. 874].) Here the nature of the partnership business, consisting of buying, processing and selling poultry fairly and reasonably implies the borrowing of money to accommodate its necessities. (*Jacobson* v. *Lamb*, 91 Cal.App. 405 [267 P. 114].)

Appellants also contend that the first cause of action was prematurely brought. While this cause of action seeks to

recover on an alleged stated account, in fact it is actually to recover on a promissory note dated July 1, 1954, due two years thereafter. This action was filed in June, 1955, and tried in March, 1956. The judgment was rendered on March 18, 1957. While plaintiff's action on the note was premature, no plea in abatement was entered. The Supreme Court said in *Seches* v. *Bard*, 215 Cal. 79, 81 [8 P.2d 835] :

"The rule has long been settled that the defense that an action is premature is in the nature of a dilatory plea not favored in the law, and that such defense must be seasonably urged in the trial court or it is waived." (See also *Kelley* v. *Upshaw*, 39 Cal.2d 179, 186 [246 P.2d 23].)

 In this case the defendants waived the right to assert the defense of prematurity.

At the trial plaintiffs stipulated that the defendants were entitled to a credit of $624.40 on the sum of $5,750 alleged in the first cause of action, and since plaintiff testified that $750 of said amount of $5,750 was money borrowed by Lester Metz in 1949, at a time prior to the formation of the partnership, defendants are entitled to an additional credit for said sum.

The judgment against Iva D. Baker is reversed. The judgment against Leonard Glenn Baker is modified by decreasing the same in the sum of $1,374.40, and as so modified the judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied August 15, 1958, and appellants' petition for a hearing by the Supreme Court was denied September 17, 1958.