[Civ. No. 9811. Third Dist. Mar. 28, 1961.]

CLAUDE N. ROSENBERG, as Executor, etc., Respondent, v. R. A. BROY et al., Defendants; MARION CLEMENS et al., Appellants.

Joseph B. Mendelson, Jack Flinn and Edgar C. Levey for Appellants.

Golis & Fredericks, Passalacqua & Mazzoni, Bacigalupi, Elkus & Salinger and Maurice Fredericks for Respondent.

SCHOTTKY, J.—Claude N. Rosenberg, as the executor of the estate of Melville C. Rosenberg, also known as Melville Casper Rosenberg, M. Casper Rosenberg and M. C. Rosenberg, respondent herein, commenced this action to quiet title to a fund which was the proceeds of the sale of certain mining stock in the possession of The Broy Company, a mining stock security broker. The Broy Company disclaimed any interest in the fund and is not involved in this appeal. Marion Clemens, Adeline Blumenthal and Gary Rosenberg all put forth claims to the fund. After a trial before the court judgment was entered in favor of the respondent executor and the adverse claimants have appealed.

The decedent was a retired osteopath and was concerned with his health. In a letter to Gary Rosenberg written June 7, 1956, the decedent wrote: ". . . I am so weak from not being able to eat . . . I have enjoyed living alone when I was well—but in time of sickness if I am too weak to prepare any food—I don't eat . . . The truth is a doctor must be in top-notch health Because of the virus infection, I have not been well enuf [sic] to have any office since 1950 With this setback I cant [sic] even take care of myself which makes me believe I will never be able to practice again which in turn causes me to meditate why I should try to struggle along a semi-invalid. On top of it all I have the looney Barbara on the sidelines waiting like a vulture. [Barbara was decedent's sister with whom he was at outs.] It is difficult for me to think, but I believe if I name you as partner in my stock accounts this would prevent them falling into the control of the witch. I am in such poor physical condition I am likely to develop a serious disease at any time & I can't lie here and suffer till I die I still have considerable stocks which I would rather see the relatives get, but if I give everything away I won't have anything to live on "

On June 7, 1956, the decedent wrote a letter to The Broy Company in which the following appeared: "I herewith grant and assign to Mr. Gary Rosenberg . . . equal trading privileges and partnership in my account. In the event of my demise he shall become owner of all securities." A copy of this letter was sent to Gary Rosenberg.

In a letter to decedent dated June 11, 1956, Gary replied, "I was quite overcome by your making me a partner in your

stock accounts at the Broy Co. It is very difficult to know just what to say at a time like this. I truly appreciate your thoughtfulness and assure you that I will make no transactions on behalf of this partnership without your instructions.''

On June 11, 1956, decedent telephoned The Broy Company and requested that it sell all of his securities and divide the proceeds equally between Gary Rosenberg, Marion Clemens and Adeline Blumenthal.

On June 12, 1956, decedent, after receiving a request for a written authorization, wrote The Broy Company and authorized it to sell all of his securities and divide the proceeds between the appellants herein.

On June 14, 1956, decedent telephoned The Broy Company and told it to disregard his letter of the 12th, but to sell the securities and credit the proceeds to his personal account.

In a letter dated June 13, 1956, decedent wrote Gary Rosenberg:

''I received your wonderful letter encouraging me to try to get back my health. I have an unstable, fragile NS that has been shattered. Stocks and stupidity leading to dozens of mistakes destroyed my reason. I dont [sic] want you to trade stocks—if the transfer is legal they can sell them for you

''I am too weak to go out and it was a most generous offer to come and get me. It seems so queer for someone to have to offer that—I have always looked out for myself & others too I want you to continue to enjoy life and you certainly know how

''I got myself into this mess & no one can get me out. After 2 mos of starvation the problem is now cardiac exhaustion''

Marion Clemens, a cousin of decedent, testified that the decedent told him at times he felt so sick and terrible that he was afraid he was going to die.

Decedent committed suicide on June 19, 1956. His will dated June 11, 1956, was admitted to probate and letters testamentary issued to respondent herein. This action followed and as stated the respondent as executor was awarded the fund.

The court found that the letter of June 7th to The Broy Company was written by decedent ''with the intent that the same be effective only upon his death and while in contemplation, fear or peril of death,'' and that on June 11th the decedent with intent to revoke any purported interest of Gary Rosenberg called The Broy Company by telephone and instructed it to sell the stocks and divide the proceeds among

defendants, Marion Clemens, Gary Rosenberg and Adeline Blumenthal.

The court found further that on June 12th decedent "with the intent of the same to be effective only upon his death and while in contemplation, fear or peril of death from a then present disease or impending peril" wrote a letter to The Broy Company "purporting to transfer an interest by gift in the subject of this action in defendants MARION CLEMENS, GARY ROSENBERG and ADELINE BLUMENTHAL," and that on June 14th, "with intent to revoke any interest created by gift in defendants MARION CLEMENS, GARY ROSENBERG and ADELINE BLUMENTHAL," decedent notified defendant THE BROY COMPANY to disregard the effect of defendants' Exhibit 'E' and to liquidate the subject of this action and hold the proceeds in his personal account."

The court found further that there was no consideration to support any partnership interest, or any other interest, in said stock to defendant Gary Rosenberg or to defendants Marion Clemens, Gary Rosenberg and Adeline Blumenthal.

The court concluded that "MELVILLE C. ROSENBERG attempted to make a gift causa mortis to defendants MARION CLEMENS, ADELINE BLUMENTHAL, GARY ROSENBERG which attempted gift causa mortis was legally revoked and defendants MARION CLEMENS, ADELINE BLUMENTHAL, GARY ROSENBERG have no right, title or interest in and to . . ., the subject of this action."

### THE APPEAL OF GARY ROSENBERG

Gary Rosenberg, referred to hereafter as Gary, first contends that the evidence is insufficient to support the finding that the transactions were gift *causa mortis*.

A gift *causa mortis* is defined in section 1149 of the Civil Code as a gift "which is made in contemplation, fear, or peril of death, and with intent that it shall take effect only in case of the death of the giver." Section 1150 of the Civil Code states that "A gift made during the last illness of the giver, or under circumstances which would naturally impress him with an expectation of speedy death, is presumed to be a gift in view of death." Whether a gift is a gift *causa mortis* is a question of fact. (38 C.J.S., Gifts, § 119.)

We believe the finding is amply supported by the record. The decedent was an osteopathic physician. He stated in his letters and in his conversations that he was a very sick man. He diagnosed his problem as cardiac failure. It is fairly

inferable that the decedent expected death to occur soon. One may also infer that a physician would know what ailed him. Even though the test to be applied is an objective one, not a subjective one, it appears that the trial court could find that the gift was made under contemplation of death. If such a finding is supported the trial court could use the presumption in section 1150 of the Civil Code to find that the gift was a gift *causa mortis*. ██ If so, the letter of June 12th requesting that the securities be sold and the proceeds divided between the three appellants revoked the alleged gift to Gary alone because it was inconsistent with a gift of securities to him alone. The gift of June 12th also could be found to be a gift *causa mortis*. This would have been revoked by the telephone call of June 14th, in which the decedent requested The Broy Company to disregard the letter of June 12th and credit the proceeds of the sale to his personal account. ██ It is, of course, an implied condition of a gift *causa mortis* that it may be revoked by the donor at any time prior to his death. (Civ. Code, § 1151; Brown on Personal Property [2d ed.] 164; *Doran* v. *Doran,* 99 Cal. 311 [33 P. 929]; *Barham* v. *Khoury,* 78 Cal.App.2d 204 [177 P.2d 579].) ██ The code does not set out any requirements for revoking a gift *causa mortis*.

██ Appellant Gary refers to the fact that on June 12, 1956, decedent wrote Edwin D. Berl and Sons, security brokers, a letter setting up a joint-ownership stock account with appellant Marion Clemens, and cites the case of *Berl* v. *Rosenberg,* 169 Cal.App.2d 125 [336 P.2d 975], in which the transfer was upheld. In that case decedent's letter stated: ''I wish to make a joint ownership account with Marion Clemens of 72 Natoma St., S. F. for sole survivor to receive all.'' [P. 128.] Also in the Berl case there was no revocation by decedent. In affirming the judgment that the transfer was complete and not revoked the court said at page 129: ''Appellants first urge that the purported gift was one in contemplation of death and invalid because the contemplated death was suicide. The parties seem to argue that the requirements of a gift *causa mortis* and one *inter vivos* are fundamentally different. An examination of the law, however, demonstrates that the only basic distinction between the two types of gifts is that a gift *causa mortis* is revocable if the donor lives, while a gift *inter vivos* is not. But other than this, the basic rules applicable to the two types of gifts are the same. In *Beebe* v. *Coffin,* 153 Cal. 174, 177 [94 P. 766], it is stated: '[I]t cannot be too clearly borne in mind that the single vital distinction between a gift

*causa mortis* and a gift *inter vivos* is that the former, being in its nature testamentary, is subject to the donor's revocation while he lives.' '' The Berl case is easily distinguishable from the instant case because in the Berl case there was no evidence or finding of revocation.

Gary contends that the court erred in not holding that a partnership had been created between Gary and the decedent and in not holding that upon the death of the decedent the securities became Gary's by reason of the terms of the partnership agreement. The existence of a partnership is ordinarily evidenced by the right and obligation of the partners to participate in the profits and losses and in the management and control of the business (37 Cal.Jur.2d, Partnership, § 6) and a partnership is not created between the parties unless there is an intent to create a partnership. (*Lusher* v. *Silver*, 70 Cal.App.2d 586 [161 P.2d 472].) In the deceased's letter to Gary, in which the partnership was first discussed, Gary was told, "It is difficult for me to think, but I believe if I name you as a partner in my stock accounts this would prevent them falling into the control of the witch. [Decedent's sister with whom he was at odds.] . . . I still have considerable stocks which I would rather see the relatives get, but if I give everything away I won't have anything to live on." Gary's reply read in part, "I was quite overcome by your making me a partner in your stock accounts at the Broy Co. . . . I truly appreciate your thoughtfulness and assure you that I will . . . make no transactions on behalf of this partnership without your instructions." Gary testified that no agreement was reached as to what was expected of him, he did not know the extent of the holding, and nothing was said about the operation of the partnership.

The letters introduced in evidence and the oral testimony support the conclusion of the trial court that there was no agreement to carry on a business at a profit. Gary, in effect, admitted this in his letter of "acceptance." He stated that he would not act on behalf of the partnership without the decedent's instructions. One of the primary elements of a partnership is for the partners to participate to some extent in the management and control of the business, and it is virtually essential to a determination that such a relationship existed. (*Dickenson* v. *Samples*, 104 Cal.App.2d 311 [231 P.2d 530].) It is fairly inferable that the only purpose of the agreement was to prevent the decedent's sister from getting any part of his estate at his death and that in

fact no partnership was intended. There is no other evidence which would support a finding of consideration for the "partnership agreement." Therefore Gary's argument based on a partnership must fail. Furthermore, the purported transfer of a partnership interest in the stock to Gary was a gift *causa mortis*. As such it was revocable by the decedent, and the evidence amply supports the conclusion of the trial court that it was revoked.

THE APPEAL OF MARION CLEMENS AND ADELINE BLUMENTHAL

 These appellants claim that the letter of June 12th constituted a gift *inter vivos* to Marion Clemens, Adeline Blumenthal and Gary Rosenberg, and therefore it could not be revoked. However, as hereinbefore pointed out, there was ample evidence that decedent was in ill health and that the gift was made under circumstances which would naturally impress him with an expectation of impending death. Any gift under such circumstances would be a gift *causa mortis*. If so, the telephone call to The Broy Company was sufficient to revoke the gift.

No other points raised required discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.