[Civ. No. 33333. Second Dist., Div. Five. Jan. 27, 1969.]

Estate of ROBERT GILKERSON FOREMAN, Deceased. KATHLEEN L. FOREMAN, Petitioner and Appellant, v. FRANK W. TYBUS et al., Petitioners and Respondents.

Rutan & Tucker, Herbert W. Walker and Rodolfo Montejano for Petitioner and Appellant.

Pray, Price, Williams & Russell and William C. Price for Petitioners and Respondents.

STEPHENS, Acting P. J.—This is an appeal from the judgment and decree confirming the sale of the partnership interest of decedent Robert G. Foreman[1] and the refusal to remove the co-executors of his estate.[2]

---

[1] Probate Code section 850 provides: "If a person who is bound by contract in writing to convey any real property or to transfer any personal property dies before making conveyance or transfer, and the decedent, if living, might have been compelled to make such conveyance or transfer, or if a person binds himself or his executor or administrator by contract in writing to convey any real property or to transfer any personal property upon or after his death, and the contract is one which can be specifically enforced, the court in which proceedings are pending for the administration of the estate of the decedent may make a decree authorizing and directing the executor or administrator to convey or transfer the property to the person entitled thereto."

Probate Code section 851 provides: "The executor or administrator or any person claiming to be entitled to such conveyance or transfer may file with the clerk of the court a verified petition, setting forth the facts upon which the claim is predicated. Thereupon the clerk shall set the petition for hearing by the court, and notice thereof shall be served on the executor or administrator personally when he is not the petitioner, and shall be published pursuant to Government Code Section 6063a before the hearing, in a newspaper published in the county where the proceedings are pending, or, if there is no such newspaper, then, in lieu of publication, three written or printed notices of the hearing shall be posted at three of the most public places in the county at least 10 days before the hearing; but if such contract was recorded before the death of the person executing it, notice of the hearing may be given by serving such notice on the executor or administrator personally, when he is not the petitioner, and posting a copy of the notice at the courthouse of the county in which the proceedings are pending, for at least 10 days prior to the hearing."

[2] Probate Code section 521 provides: "Whenever a judge of the court has reason to believe from his own knowledge, or from credible informa-

For purposes of ready identification of the persons hereinafter named, Robert G. Foreman will be referred to as Robert. June Tybus and Frank Tybus will be referred to as June and Frank, respectively. Appellant Kathleen L. Foreman, decedent's surviving spouse, will be referred to as Kathleen.

: As stated in appellant's opening brief and concurred in by respondents, Robert, June and Frank formed a partnership in 1946 for the purpose of manufacturing and selling pipe through the partnership entity.[3] The amount of capitalization was $9,000, comprising contributions of $3,000 by each partner.

According to the testimony, in December 1949, the partnership records showed Robert's capital account amounted to $20,640; Frank's was $20,248; and, dated a year later, June's was $27,346. Since June's was of such different date, it was stricken from the testimony. It is clear from the record that from a modest beginning the partnership flourished and in 1949, from partnership funds, and a 1 7/10-acre parcel of real property was purchased for $17,500 by partial down payment and subsequent installment payments. At that time, title to the parcel was taken in the names of the individuals as tenants in common. In February 1951, a 10-acre parcel was purchased, in the same manner, for $25,000. In the latter part of 1951, written articles of partnership, dated January 1, 1950, were signed. While the stipulation set the property prices as above stated, the partnership's accountant testified that the books carried the properties in the amount of $44,141. The articles formed the Lakewood Pipe Company for the purpose of "[o]wning and leasing real property, and buying, selling and manufacturing pipe fittings."

tion, that any executor or administrator has wasted, embezzled or mismanaged, or is about to waste or embezzle the property of the estate committed to his charge, or has committed or is about to commit a fraud upon the estate, or is incompetent to act, or has permanently removed from the state, or has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, he must cite such executor or administrator to appear and show cause why his letters should not be revoked, and may suspend his powers until the matter is investigated. If the executor or administrator has absconded or conceals himself or has removed or absented himself from the state, notice of the pendency of the proceedings may be given to him by publication, in such manner as the court may direct, and the court may proceed upon such notice as if the citation had been personally served."

[3]Robert and June were husband and wife and remained such until their divorce on November 30, 1957. In 1958 Frank and June married, and have remained husband and wife to this date. On June 3, 1959, Robert married Kathleen, and on Robert's death, October 11, 1966, she was, and now is, his surviving spouse.

According to the Articles of Co-partnership, the gross assets contributed to the partnership were to consist of all the assets "enumerated in Exhibit 'A,' attached, which have been appraised and valued by the parties hereto in the sum of $ ." The schedule of assets designated as "Exhibit 'A'" was never attached, nor were the assets appraised or valued, nor was said appraisal sum inserted.

The Articles of Co-partnership further provided that upon the death of a partner, the deceased partner's representative would have no right to participate in the continuing partnership but would be entitled to receive in full satisfaction and discharge of the deceased party's interest in the partnership, the following:

1. The amount of the deceased party's contribution to the capital of the partnership, after deducting any losses thereto, which amount shall be paid in 10 equal annual installments, commencing with the end of the then existing calendar year.

2. One-third of the net profits of the partnership that shall have been earned between the date of the latest annual accounting of the partnership and the date of the occurrence of the death of such deceased party, together with any other accumulated profits standing to the credit of such party as then unwithdrawn.

Subsequent to the execution of the Articles of Co-partnership, on October 11, 1951, upon advice of tax counsel and in order to avoid personal liability, two corporations, the Lakewood Coupling Company and the Lakewood Pipe Service Company, were formed. Substantial partnership assets including all business activities were transferred to the corporations; however, the partnership retained title to the real property, which was carried on the partnership books as an asset. Thereafter the partners conducted the business through the corporate entities. In later years, two other corporations, Lakewood Pipe of Texas (still in existence) and Lakewood Pipe of Nebraska (now dissolved), were formed by the parties. All corporations were capitalized with partnership funds. The corporations rented the partnership real property and improvements thereon. The sole business of the partnership was then to hold land and buildings and to rent those to the corporations.

On December 1, 1952, a document entitled "Buy and Sell Agreement" was prepared and executed by the parties providing for insurance funding of the original partnership agreement in the event of death of a partner. The Buy and

Sell Agreement reiterated and incorporated the provisions of the alleged written partnership agreement, merely adding life insurance funding for the buy-sell provisions.

The agreement further established a trust and directed William C. Price to act as trustee, to hold the life insurance policies and to collect the proceeds of a deceased partner's policy and pay the beneficiaries. Further, the trustee was directed to ascertain the purchase price of the deceased partner's interest, and the trustee could rely on a certified statement of the partnership's accountant.

In paragraph 2 of this Buy and Sell Agreement, it was provided that "Upon the death of any of the partners, the surviving partners shall purchase, and his executor or administrator shall sell to them, his interest in the partnership."

Under the Buy and Sell Agreement, each two individuals purchased life insurance on the life of the third, the original amount thereof being $40,000. The amount was subsequently increased by $50,000, and in 1965 was in the total figure of $90,000.[4]

The partners continued their association, with the exception of one apparently short period of time during which Robert operated a bar, and despite the changes of marital status, the will of Robert drawn in 1953 remained unchanged to the date of his death, October 11, 1966. So far as the pipe business was concerned, Robert was the salesman, Frank was in production, and June was the office manager and secretary-treasurer.

In the latter part of 1964 and in 1965, Robert, Frank and June consulted with an attorney Casey with respect to estate planning, at least as it pertained to June. It was at this time that the various life insurance coverages were increased by $50,000 following consultation with attorney Casey and a Mr. Klein from Connecticut Mutual Life Insurance Company. The fact that this additional insurance was being acquired was conveyed to attorney Price at a time the partners consulted with him. The information given by the partners to Mr. Price was that the additional insurance "on the life of each one [was] to further fund the Buy-Sell Agreement; that they thought this was more in line, they thought this would bring

---

[4]The trustee designated in the Buy and Sell Agreement, though not the named beneficiary under Robert's life insurance policy, testified that he held constructive possession of the proceeds thereof through the insurance company. This is conceded by Frank and June through their actions though they are in fact the named beneficiaries. Also, the Buy and Sell Agreement specifically states the policy numbers of the original funding policies.

the insurance up with what the obligations would be under the agreement.'' At this same time the individuals ''wanted to look at the wills and they wanted to talk about them and the whole problem of their estates and what would happen on the death of one of them.''

Also, during the period following the marriage of Frank and June, a residence was built upon partnership property, and funds from the partnership were used to pay for this structure. Some $60,000 of June's separate funds were used to furnish the house, and a 6 percent note was executed by the partnership in such amount in June's favor. The residence was used for the general business purposes, and was depreciated at a 60 percent rate on the partnership books. The house was completed in 1965.

Following the death of Robert, pursuant to the provision of his will, letters testamentary issued to Frank and June as co-executors.

Probate Code section 571 provides that when a partner dies, a surviving partner has the right to continue possession of the partnership and to settle its business, but the interest of the decedent in the partnership must be included in the estate inventory and be appraised as other property. There was provided in the particular partnership articles with which we are here involved an authorization for the surviving partners to assume ownership of the partnership, and a formula for establishing the value of the decedent's assets, the amount of which the survivors were obligated to pay. The same obligation and plan were carried forward in a Buy and Sell Agreement between the partners. To accomplish this transfer of interest, a petition in compliance with sections 850 and 851 of the Probate Code was filed by Frank and June. Kathleen objected to the petition for conveyance, and also petitioned for the removal of the co-executors, based on alleged wrongdoing toward the estate by virtue of their seeking the court order of conveyance. If, therefore, the petition of Frank and June is proper, which we conclude it is, the petition for removal fails.

The contentions on appeal are stated as follows:

1. Does the probate court have jurisdiction to specifically enforce an agreement where the parties seeking specific enforcement do not appear in their individual capacities?

2. Did the court fail to make sufficient findings on the material issues?

3. Is there a substantial basis in the record in support of

the order directing conveyance of the decedent's partnership interest pursuant to the buy-sell provisions in the partnership and buy-sell agreements?

4. Is there a substantial basis in the record in support of the court's ruling that decedent waived his rights to a dissolution and accounting?

5. Is there a substantial basis in the record to support the court's order refusing to remove the co-executors?

Except for the question relative to the sufficiency of the findings, the questions need not be separately dealt with to answer the fundamental question involved—i.e., is there a substantial basis in the record in support of the order directing conveyance of the decedent's partnership interest pursuant to the buy-sell provisions in the partnership and buy-sell agreements?

The jurisdiction of the court is attacked because "the Probate Court did not have the surviving partners in their individual capacities before the court and thus it did not have jurisdiction over all parties in interest." It is true that in response to this issue the brief on behalf of Frank and June states that the petition was filed in their capacities as co-executors. We are not bound by this concession, for the evidence, consisting of the petition itself, is of record before us and establishes beyond any question that there is no merit to this contention. The petition, filed January 19, 1967, bears the attorneys' letterhead and shows the parties they represent. There, it states: "Attorneys for *Petitioners*." The first line of the body of the petition states: "Petitioners FRANK W. TYBUS and JUNE E. TYBUS represent as follows:." The petition is signed at the end thereof in the names of the two individuals, without reference to their capacities as co-executors. The sole suggestion in the petition that Frank and June may be petitioners in their co-executor capacities is in the prayer, wherein it is stated: "Wherefore, petitioners pray that the court make an order authorizing and directing them to carry out the terms of the contracts. . . ." Apparently, it is from the statement contained in the Notice of Hearing that appellant claims the capacities established. In that notice, it is stated: "FRANK W. TYBUS AND JUNE E. TYBUS, as Co-Executors of the above entitled estate, having on the 19th day of January, 1967, filed with the Clerk of the above entitled Court a Petition for Order Directing Conveyance of Real and Personal Property Sold on Contract by Decedent, . . . ." while this notice makes ambiguous that which clearly was not, we

find that, by stipulation of the parties, all necessary parties, in whatever and each capacity were before the court. The transcript of proceedings before the trial court states:

"THE COURT: . . . I understand that counsel have stipulated that the Court does have jurisdiction to proceed herein within the meaning of the Probate Code.

"MR. PRICE: So stipulated.

"MR. WALKER: It's my understanding that we have acknowledged the fact the Court does have jurisdiction under Section 580 and the sections immediately following 580—

"MR. PRICE: 850.

"MR. WALKER: 850, I'm sorry, 850 and the immediate sections following 850 to hear this matter."

It is hornbook law that jurisdiction, as such, is not a subject which may be established by stipulation. For the stipulation to have any sense at all, its import was that the necessary parties were before the court, and all were ready to proceed. Even if this were not the construction which need be followed, here the findings of the court establish that the individuals Frank and June, as well as Frank and June as co-executors, were before the court. Findings XII (in part) and XVIII read:

". . . In open court the co-executors in their capacity as surviving partners, as well as executors, agreed to an increase in the purchase price by said amount." [No. XII.]

"That the surviving co-partners have agreed to pay any sums necessary in addition to the insurance and are, in effect, offering a payment in cash for the partnership interest of decedent." [No. XVIII.]

And Conclusions of Law V and VI read:

"That by the terms of both the partnership and buy and sell agreements the co-executors as the personal representative of deceased were required to sell to the surviving partners and they were required to purchase his interest in the partnership for the purchase price of $105,899.00 and to assume the debts and obligations of the deceased partner and to save the estate harmless." [No. V.]

"That said surviving partners have agreed to pay and tendered in cash the sum of $105,889.00 and to assume the partnership liabilities pursuant to said contracts and the co-executors propose to accept said sum and transfer all right, title and interest in the partnership to the surviving partners." [No. VI.]

A more specific finding to the effect that Frank and June

were before the court in every essential capacity is totally· unnecessary. In fact, the first suggestion of this contention is' in the request for special finding (8), after a full hearing on. the merits and extensive argument by counsel. To us it appears that this delayed attack is without merit, having been adequately answered by the facts shown in the record and by· the law as stated in *Estate of Garnier,* 147 Cal. 457, 460 [82 P. 68], where the court, dealing with the same argument as made here, stated: ''However that may be, an executor or·administrator under the law has the same right as an outside party, whether his claim be a money demand, or for the performance of a written contract to transfer property, and.the law does not require that he should first resign his position as executor or administrator in order to have his claim allowed or enforced against the estate. Thus the law is written, and it is not for the courts to say that some other course than that provided in the statute should have been pursued in this case. The judge of the probate court is the guardian of the estate, and the executor or administrator simply acts under his order and direction.''

 Is there substantial evidence to justify the findings and judgment of the court?

By referring to the recital of facts, it is seen that the parties joined in a partnership, executed articles of partnership, kept books and records of a partnership entity, provided a means and plan by which the partnership would not be terminated by the demise of one of the three partners and executed a buy-sell agreement to memorialize such plan, and expended monies to fund the buy-sell plan by obtaining life insurance. Certainly, in the face of 20 years of partnership actions, it is unreasonable to deny the existence of the partnership merely because the schedule of assets designated as ''Exhibit 'A' '' was never attached to the Articles of Co-partnership, the· assets never appraised or valued, and the appraisal sum never inserted in the blank space provided therein. Indefiniteness as to details will not void the partnership agreement when the indefiniteness may be made definite by other evidence. As was stated in *Greene* v. *Brooks,* 235 Cal.App.2d 161 at pp. 165-166 [45 Cal.Rptr. 99] : ''The ultimate test of the existence of a partnership is the intention of the parties to carry on a definite business as coowners. Such intention may be determined from the terms of the parties' agreement or from the surrounding circumstances (*Page* v. *Page,* 199 Cal. App.2d 527 [18 Cal.Rptr. 897] ; *Haas* v. *Hodge,* 171 Cal.App.

2d 478 [340 P.2d 632]; *Gardiner* v. *Gaither,* 162 Cal.App.2d 607 [329 P.2d 22]; *Wurm* v. *Metz,* 162 Cal.App.2d 262 [327 P.2d 969]). A partnership need not be evidenced by writing (*Calada Materials Co.* v. *Collins,* 184 Cal.App.2d 250 [7 Cal. Rptr. 374]). It is immaterial that the parties do not designate the relationship as a partnership or realize that they are partners, for the intent may be implied from their acts (*Constans* v. *Ross,* 106 Cal.App.2d 381 [235 P.2d 113]; *Singleton* v. *Fuller,* 118 Cal.App.2d 733, 743 [259 P.2d 687]). Some degree of participation by partners in management and control of the business is one of the primary elements of partnership (*Rosenberg* v. *Broy,* 190 Cal.App.2d 591 [12 Cal.Rptr. 103]).'' (See also, *Burrow* v. *Timmsen,* 223 Cal.App.2d 283, 288 [35 Cal.Rptr. 668, 100 A.L.R.2d 544].)

A similar case to that before us is *Estate of Ferrero,* 142 Cal.App.2d 473 [298 P.2d 604], wherein the departure from the agreement, in detail, was held immaterial since the general purpose was achieved. This was specifically referable to the life insurance provisions as agreed to in *Ferrero,* and adequately disposes of a similar detail-objection relative to the life insurance involved in the instant case. The books and records of the partnership lay to rest any question as to either the initial assets and contributions or their value. The agreements were not only sufficient to establish the partnership and the buy-sell agreement, but were founded upon adequate consideration. Not only was there consideration at the inception of the attacked agreements, but the adequacy and fairness to the partners were reviewed within a relatively short period prior to Robert's death, during which all of the facts, property values, corporate stock interests, and marital status were substantially the same as of the date of death.

One other factor appears from the record and that is that at the time the life insurance was raised to $90,000, all parties apparently were in good health, at least to the insurable extent of the additional $50,000 each. Under these circumstances, it is only reasonable to assume that whatever advantage existed as to surviving partners, no one foresaw which two would be in that position.

Portions of the dissertation set forth in 45 Cal.Jur.2d, § 24 (Specific Performance), 285-289[5] adequately dispose of appellant's contention of inadequate consideration.

---

[5] 45 Cal.Jur.2d, § 24: ''In determining the adequacy of consideration, the relations of the parties and their love, affection, and regard for each other, as well as the object to be attained by the contract, must be con-

The contention that the agreements had been abandoned, repudiated, or breached is totally without merit and needs no analysis in the light of the conduct of the parties, including Robert, and the finding by the trial court against such contention is sustained by overwhelming evidence. We therefore answer appellant's prime contention by concluding that the record amply supports the order directing conveyance of the decedent's partnership interest pursuant to the buy-sell provisions in the partnership and buy-sell agreements.[6]

---

sidered. Insofar as these may amount to consideration they may be taken into account in determining adequacy. . . .

"The requirement of adequate consideration in a specific performance action does not mean that the value of the things to be given in exchange for property to be conveyed must measure up to the appraisement placed on them by the defendant. The consideration need only be just and fair under the circumstances. . . .

"Adequacy of consideration is determined as of the date of execution of the contract. Thus, where a contract for the sale of real estate is supported by adequate consideration at the time of its execution, a subsequent increase in the value of the land does not make the consideration inadequate or the contract inequitable, or deprive the court of jurisdiction to render a judgment for specific performance.

"The principles of adequacy of consideration are **not restricted to** contracts for the conveyance of land; they apply where equity is invoked to enforce the specific performance of any obligation. And with regard to contracts for the sale of land, the principles apply equally to both parties, since there is no reason why the judicial conscience should not be as tender toward the buyer as toward the seller if he is the victim of an unconscionable bargain.

" . . . . . . . . . . . . ..

"Fairness and adequacy of consideration are peculiarly questions of fact to be determined in the light of all the circumstances, and the finding of the trial court should not be disturbed by an appellate court unless it is clear that there is no substantial evidence to support it. The questions are addressed solely to the discretion of the trial court."

[All footnotes have been omitted.]

[6]The appellant requested 10 specific findings, and claims a reversal is required in that Code of Civil Procedure section 634 was not complied with. The findings as made adequately find on each specific finding requested. There is no requirement in section 634 that the findings as drawn be in the same words as the requests therefor so long as the subjects are adequately covered by the court's findings.

Appellant's requested specific finding 1, "Whether or not the written Partnership and Buy-Sell Agreement is invalid by reason of the omission of the partners to attach a schedule of assets thereto, or to place a valuation thereon, as provided for in said Agreement; and whether or not said omissions make such Agreements so uncertain and ambiguous as to be not capable of specific performance by this court," is adequately answered by the trial court's findings as follows:

Finding I finds that a written partnership agreement was entered into on January 1, 1950 and that after December 1, 1952, all the parties entered into a buy-sell agreement; II, that the partnership continued until the death of Robert, pursuant to agreement; XIV, that there is no uncertainty or ambiguity in either the partnership agreement or the buy-sell agreement; XV, that the allegation that the parties failed to com-

■ Since the petition for removal of the co-executors was based upon the premise that by seeking court approval of the agreements for conveyance, the co-executors failed their

plete the formation of the partnership is not true. (This finds untrue the allegation of objector to the petition to convey ''That the agreement of January 1, 1950 and the agreement of December 1, 1952 . . . are void and of no effect whatsoever [in that] (1) the agreement dated January 1, 1950 fails to set forth a schedule of the assets to be contributed to the partnership, or to appraise said assets as required by the terms of the agreement thus rendering the agreement fatally vague and uncertain. (2) That due to the failure to provide such schedule and appraise such assets the agreement was never consummated.'')

Appellant's requested specific finding 2, ''Whether or not the written Partnership and Buy-Sell Agreements are invalid, by reason of the failure of the parties thereto to complete the formation thereof by setting up the trust and carrying out its terms as set forth therein, and whether or not the omission to complete said trust is the basis for this court to refuse the specific performance of the buy-sell provisions thereof,'' is answered by the same findings as set forth with reference to appellant's requested specific finding 1, and adequately cover that demand.

Appellant's requested specific finding 3, ''Whether or not the surviving partners transferred certain partnership assets to the corporations wholly owned by them, and whether or not said transfer was an act of termination of said partnership and bars the specific performance of the buy-sell provisions thereof,'' is adequately answered by the trial court's findings as follows:

Finding III finds that the parties continued the partnership pursuant to the agreement continuously until the death of Robert G. Foreman on October 11, 1966; VII, that during the term of the partnership the 3 partners organized a total of 4 corporations, all in connection with the business operations—2 prior to the execution of the buy and sell agreement and 2 thereafter, to which certain capital assets of the partnership were transferred, at which time appropriate reductions were shown in the capital accounts on the books and the stock, of which they took in proportionate shares of one-third each; VIII, that neither the partnership agreement nor the buy-sell agreement has by any unequivocal instrument or conduct been in any degree repudiated or terminated; IX, that there has been no abandonment, repudiation, or modification by oral contract of either of said agreements.

Appellant's requested specific finding 4, ''Whether or not there was a general commingling of assets between the partnership and corporate entities owned by the surviving partners such as to give rise to the termination of said partnership, and grounds upon which this court should refuse to order the specific performance of the terms thereof,'' is adequately answered by the trial court's findings as follows:

In addition to findings III, VII and VIII heretofore set forth, finding X finds that the buy-sell agreement applied only to the interest in the partnership and did not apply to any of the corporate enterprises or any of the stock interest held by any of the parties in the corporations; XII, that the surviving copartners used certain partnership funds for the erection of a residence on the partnership property, which they have used without paying rentals therefor, and to which the decedent indicated dissatisfaction; that a reasonable return on the assets so used would, for the partnership interest of decedent, come to $5,000; XVI, that by failing to take any affirmative action in his lifetime to dissolve the partnership in the manner permitted by law, and by his conduct in continuing in the partnership to all intents and purposes as before any alleged diversion

fiduciary obligation to the estate, and we have concluded adversely to that premise, it is unnecessary to analyze the court's power to remove an executor for mismanagement or conflict of interest. We concur with the trial court and the findings, which are adequately supported by the evidence, and hence the petition to remove necessarily was denied.

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied February 17, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1969.

---

of assets took place and after receiving financial statements therefor, decedent waived any ground that he might have had for dissolution.

Appellant's requested specific findings 6, 7, and 9, ''Whether or not the surviving partners received a disproportionate share of the profits of said partnership by reason of the diversion to their own use of funds from said partnership for the construction and furnishing of a home for their own personal use, and whether or not said profits received by the surviving partners should be the basis for this court refusing to order the specific performance of the buy-sell provisions of said Agreement''; ''Whether or not each of the acts and conduct as requested to be found above is the basis for this court to order that an accounting be made by the surviving partners to the estate of all of the partnership transactions and accounts''; and ''Whether or not the surviving partners have paid rental for the use of the premises constructed with partnership funds, and if said use was not reimbursed the exact amount of the reasonable value thereof and the periods of time within which the surviving partners used said premises without reimbursing the partnership,'' are adequately answered by the findings set forth with reference to appellant's requested specific finding 4.

Appellant's requested specific finding 8, ''Whether or not this court has jurisdiction over the surviving partners by reason of the fact that they are not parties in their individual capacities to this petition, but in fact appear only as co-executors of the estate of Robert G. Foreman,'' has been covered in the text of this opinion.

Appellant's requested specific finding 10, ''That the diversion of partnership assets to the use of the surviving partners in constructing and furnishing the home for their personal use and the failure to include the reasonable value thereof in computing the capital account and undistributed profit owing to the decedent, Robert G. Foreman, under the terms of the Partnership and Buy-Sell Agreement constitutes mismanagement of the estate by the co-executors and constitutes grounds for the removal of said co-executors,'' presumes that which has been found not true by virtue of findings to the contrary, as referred to above, specifically in answers to appellant's requested specific findings 4, 5, 6, 7 and 9.